731 S.E.2d 6

VIRGINIA MARINE RESOURCES COMMISSION

v.

CHINCOTEAGUE INN and Raymond Britton.

Record No. 0086–12–1.

Court of Appeals of Virginia,
Chesapeake.

Aug. 14, 2012.

Paul Kugelman, Jr., Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General; Elizabeth A. Andrews,

Senior Assistant Attorney General; David C. Grandis, Assistant Attorney General, on briefs), for appellant.

Jon C. Poulson for appellees.

Present: ELDER, FRANK and HUMPHREYS, JJ.

FRANK, Judge.

Appellant, the Virginia Marine Resources Commission (VMRC), appeals from an order of the circuit court of Accomack County, holding that VMRC lacked jurisdiction to order appellee, the Chincoteague Inn (the Inn), to remove a floating platform from over state-owned bottomland. VMRC argues the circuit court erred in ruling that VMRC considered the floating addition a vessel where VMRC made no such determination. VMRC also alleges the circuit court erred in holding that VMRC had no jurisdiction to order the removal of the floating platform. Finally, VMRC assigns error to the circuit court's award of fees and costs to the Inn. For the reasons stated, we reverse and remand.

## PROCEDURAL HISTORY

On June 15, 2010, VMRC wrote to Raymond Britton, as manager of the Inn, notifying him that he needed to remove a portion of an unauthorized floating platform next to the Inn, because the platform was in violation of Code § 28.2–1212(B). VMRC subsequently brought the matter before its Commission for enforcement action.

On August 24, 2010, the Commission held a hearing and heard argument. By letter dated August 26, 2010, VMRC informed the Inn that the Commission found the floating addition to be an unlawful use of state-owned bottomland, in violation of Code § 28.2–1203, and ordered the portion of the platform over state-owned bottomland to be removed within ten days.

The Inn mailed a notice of appeal on September 23, 2010. On October 14, 2011, the circuit court of Accomack County heard the appeal and ruled the VMRC lacked jurisdiction over

the floating platform. At that time, the circuit court deferred ruling on the Inn's request for fees and costs.

The circuit court issued its final order on December 20, 2011, finding that VMRC lacked jurisdiction to order the removal of the floating platform. The circuit court also ruled that the Inn had substantially prevailed and awarded attorney's fees and costs.

## BACKGROUND

In June of 2010, VMRC learned that a large floating platform had been placed adjacent to the Inn and was reportedly over state-owned bottomland. VMRC conducted a site inspection on June 11, 2010 and determined that at least part of the platform was not over state-owned bottomland. On June 15, VMRC sent the Inn a notice to comply, through Britton, regarding the unauthorized portion of the floating platform. The notice gave the Inn ten days to remove the illegal portion of the platform.

On June 22, VMRC sent another letter to the Inn, stating that failure to remove the floating platform would result in VMRC enforcement action. A site inspection on June 28 showed that the platform had not been removed.

VMRC held a hearing on August 24. At the hearing, Britton testified that the floating platform had a bar, tables, and a gangplank leading to the Inn's restaurant. Britton intended to use the platform for four months, to accommodate seasonal restaurant and bar overflow. Britton also testified that the platform was a barge normally used in his construction business and therefore was a vessel, noting that on July 19, 2010, the barge was disconnected from electric and water lines, taken out of its slip by its normal push boat, taken up Chincoteague Channel to the old drawbridge, then returned to its slip and reconnected, all in 32 minutes.

After considerable debate over whether the Commission had jurisdiction over a vessel, the Commission ultimately concluded that the "floating structure" was an unlawful use of state-owned bottomland and directed the Inn to remove the offend-

ing portion of the platform under VMRC's jurisdiction within ten days. The Commission never made a finding that the structure was a vessel.

On September 16, 2010, VMRC notified the Inn that because it had not removed the platform from the Inn, it was violating the Commission's order. VMRC then referred the matter to the Attorney General to petition the appropriate circuit court for an order requiring removal of part of the platform, as well as the assessment of civil penalties.

The Inn mailed a notice of appeal to VMRC on September 23, 2010. On appeal to the circuit court, Britton argued that VMRC lacked jurisdiction over a temporarily moored barge or vessel because federal maritime law preempts state regulation over any vessel. On October 14, 2011, the circuit court heard argument and accepted the Inn's position, ruling that VMRC lacked jurisdiction over the platform adjacent to the Inn, as it was moored and docked, not permanently attached to land, and because it was capable of being moved from place to place in navigable waters.

This appeal follows.[1]

## ANALYSIS

VMRC first contends the circuit court erred when it ruled that VMRC considered the floating addition a vessel where VMRC made no such determination and where making this determination is beyond the scope of a circuit court's review of an administration case decision. The Inn argues that this issue is waived. We agree with the Inn that this argument was not preserved in the circuit court. At oral argument, VMRC conceded the issue was not preserved and that the structure in question was a vessel.

---

1. VMRC alleges that the Inn's brief contains unsupported facts and inadequate citation to the record, in violation of Rule 5A:21(c). We have thoroughly reviewed the record in this case, not merely the briefs of the parties. Our analysis is not based on the Inn's statement of facts, but on the record. *See Ward v. Charlton,* 177 Va. 101, 107, 12 S.E.2d 791, 792 (1941).

VMRC next contends the circuit court erred in finding that VMRC did not have any jurisdiction to order the removal of the portion of the floating addition over state-owned bottom-land.[2]

Here, we review whether the circuit court correctly ruled VMRC had no jurisdiction because the structure in question is a vessel. The issue, as framed by both parties and as presented at oral argument, is whether federal maritime law preempts the state's ability to order the removal of the structure. The Commission never ruled on federal preemption.

The preemption issue is one of law. Code § 2.2-4027 of the Virginia Administrative Process Act (VAPA) allows judicial review of an agency decision.

> Under VAPA, the circuit court reviews an agency's action in a manner " 'equivalent to an appellate court's role in an appeal from a trial court.' " *J.P. v. Carter,* 24 Va.App. 707, 721, 485 S.E.2d 162, 169 (1997) (quoting *Sch. Bd. v. Nicely,* 12 Va.App. 1051, 1061–62, 408 S.E.2d 545, 551 (1991)). "In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal." *Gordon v. Allen,* 24 Va.App. 272, 277, 482 S.E.2d 66, 68 (1997) (citation omitted). "The burden is upon the party complaining of the agency action to demonstrate an error of law subject to review." *Johnston–Willis, Ltd. v. Kenley,* 6 Va.App. 231, 241, 369 S.E.2d 1, 6 (1988) (citing Code § 9–6.14:17; *Roanoke Memorial Hospitals v. Kenley,* 3 Va.App. 599, 603, 352 S.E.2d 525, 527 (1987)).

*Commonwealth v. Blue Ridge Envtl. Def. League, Inc.,* 56 Va.App. 469, 479–80, 694 S.E.2d 290, 295–96 (2010).

---

2. On appeal, the Inn supports the circuit court's decision, contending that Code § 28.2–1203 applies only to fixed structures. It is not clear from the circuit court's ruling whether Code § 28.2–1203 barred the Commission from exercising jurisdiction. The arguments before the circuit court were 1) the scope of Code § 28.2–1203 and 2) whether state regulations were preempted by federal maritime law. The scope of Code § 28.2–1203 would appropriately be addressed by the circuit court on remand.

■ Under the "substantial evidence" standard, the reviewing court may reject an agency's factual findings only when, on consideration of the entire record, a reasonable mind would necessarily reach a different conclusion. *Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd.*, 270 Va. 423, 441, 621 S.E.2d 78, 88 (2005) (citing *Aegis Waste Solutions v. Concerned Taxpayers*, 261 Va. 395, 404, 544 S.E.2d 660, 665 (2001)).

■ Although we are bound on appeal to the trial court's findings of historical fact, *Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg*, 41 Va.App. 468, 490, 585 S.E.2d 858, 869 (2003), we review questions of law *de novo*. *See Clark v. Marine Res. Comm'n*, 55 Va.App. 328, 334–35, 685 S.E.2d 863, 866 (2009) (citing *Moreau v. Fuller*, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008)).

> [J]udicial review of a legal issue requires little deference, unless it ... falls within an agency's area of particular expertise. Whether the issue is one of law or fact or substantial evidence, we are directed to take account of the role for which agencies are created and public policy as evidenced by the basic laws under which they operate. Thus, the degree of deference afforded an agency decision depends upon not only the nature of the issue, legal or factual, but also upon whether the issue falls within the area of experience and specialized competence of the agency.

*Appalachian Voices v. Air Pollution Control*, 56 Va.App. 282, 289, 693 S.E.2d 295, 298 (2010) (internal citations and quotations omitted).

■ VMRC challenges the circuit court's ruling that the Commission had no jurisdiction to order the removal of a portion of the floating structure. Specifically, VMRC contends it does have jurisdiction to order cessation of encroachments over state-owned bottomlands and that federal maritime jurisdiction does not preempt state jurisdiction. The Inn responds that the structure is a moored vessel and is subject exclusively to federal admiralty or maritime law. The Inn further argues that any state attempt to regulate a moored

vessel is preempted by federal law if the state law is inconsistent with federal law.[3]

Essentially, our analysis is whether the vessel in question is state- or federally-regulated. We begin by acknowledging that "the operation of a boat on navigable waters, no matter what its size or activity, is a traditional maritime activity to which the admiralty jurisdiction of the federal courts may extend." *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 979 (8th Cir.1974). However, assuming maritime law is applicable, it does not necessarily follow that state regulations are preempted. According to *McCready v. Commonwealth*, 68 Va. (27 Gratt.) 985, *aff'd*, 94 U.S. 391, 24 L.Ed. 248 (1876), the navigable waters within the state's territorial limits, as well as the soil beneath those waters, are the property of the state and may be controlled by the state in its discretion for the benefit of the people, as long as the state does not interfere with the authority of the federal government in regulating commerce and navigation.

Article XI, § I of the Virginia Constitution expresses this Commonwealth's policy to protect its waters from pollution and impairment for the benefit, enjoyment, and general welfare of the people. To that end, Code § 28.2–101 provides, *inter alia*, that VMRC's jurisdiction "shall include the Commonwealth's territorial sea and extend to the fall line of all tidal rivers and streams except in the case of state-owned bottomlands where jurisdiction extends throughout the Commonwealth." Further, Code § 28.2–1203(A) provides, *inter alia*

> It shall be unlawful for any person to build, dump, trespass or encroach upon or over, or take or use any materials from the beds of the bays, ocean, rivers, streams, or creeks which

---

**3.** The Inn, in its brief, argues the Commission erred in certain findings, i.e. the structure did not encroach on state bottomlands, and it was not a permanent structure or improvement constructed on or over state bottomlands. We do not address these allegations because the Inn did not assign cross-error to them, and under Rule 5A:21(b), an appellee's brief must contain any additional assignments of error it wishes to present.

are the property of the Commonwealth, unless such act is performed pursuant to a permit issued by the Commission. . . .

Code § 28.2–1200 states in part:

All the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth and may be used as a common by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.

The federal government has enacted a statutory scheme defining the roles of federal and state governments in regulating navigable waters.

43 U.S.C. § 1311(a) states in part:

It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States or the persons who were on June 5, 1950, entitled thereto under the law of the respective States in which the land is located, and the respective grantees, lessees, or successors in interest thereof.[4]

Section (d) states:

Authority and rights of United States respecting navigation, flood control and production of power. Nothing in this

---

**4.** 43 U.S.C. § 1313 exempts federally-owned lands from § 1311, retaining all the federal government's navigational servitude and rights in and powers of regulation and control over those lands for the constitutional purposes of commerce, navigation, national defense, and international affairs.

subchapter or subchapter 1 of this chapter shall affect the use, development, improvement, or control by or under the constitutional authority of the United States of said lands and waters for the purposes of navigation or flood control or the production of power, or be construed as the release or relinquishment of any rights of the United States arising under the constitutional authority of Congress to regulate or improve navigation, or to provide for flood control, or the production of power.

Within this statutory framework, we now determine whether federal maritime jurisdiction, under the facts of this case, preempts state law. The Inn contends that the operation of a vessel on navigable waters is a traditional maritime activity and that VMRC's order of removal is repugnant to the right of navigation.

The United States Supreme Court, in *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), provides us with the criteria to determine this issue. In *Yamaha,* the appellee decedent was killed while riding a jet ski manufactured by Yamaha. The decedent's parents brought an admiralty action for damages, invoking Pennsylvania's wrongful death and survival statutes. Yamaha responded that the state remedies could not be applied because the decedent died on navigable waters, contending that federal maritime wrongful death law provided the exclusive basis for recovery. The conflict between maritime law and Pennsylvania's wrongful death statute was the extent of damages.

The Supreme Court held:

Because this case involves a watercraft collision on navigable waters, it falls within admiralty's domain. See *Sisson v. Ruby,* 497 U.S. 358, 361–367 [110 S.Ct. 2892, 2895–98, 111 L.Ed.2d 292] (1990); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 677 [102 S.Ct. 2654, 2659, 73 L.Ed.2d 300] (1982). "With admiralty jurisdiction," we have often said, "comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 864 [106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865] (1986). The

exercise of admiralty jurisdiction, however, "does not result in automatic displacement of state law." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 [115 S.Ct. 1043, 1054, 130 L.Ed.2d 1024] (1995).

*Yamaha*, 516 U.S. at 206, 116 S.Ct. at 623.

The *Yamaha* Court recognized that vindication of maritime policies demanded uniform adherence to a federal rule, with no leeway for variation or supplementation by state law. *See id.* at 210, 116 S.Ct. at 625–26. State law cannot interfere "with the harmonious operation of maritime law." *Id.* However, the United States Supreme Court concluded that the damages available for the decedent's death were properly governed by state law, because Congress has not prescribed damages for wrongful death of a non-seafarer in territorial waters.

*State of Maryland Dept. Natural Resources v. Kellum*, 51 F.3d 1220 (4th Cir.1995), addressed whether Maryland's strict liability statute was preempted by federal admiralty law, which premised liability on negligence. Kellum's barge went aground on and damaged state-owned oyster grounds. Maryland brought an action as an admiralty or maritime claim, alleging strict liability under Maryland law. The Fourth Circuit concluded the injury to the oyster ground resulted from an occurrence unique to maritime law, namely the stranding of a vessel. *Id.* at 1223. It concluded "the result for such a maritime tort is in admiralty and grounded on maritime theories of negligence and damages." *Id.* Maritime law governing a traditional maritime tort "requires findings of fault and causation as predicates for liability." *Id.* at 1224. However, the application of the Maryland "strict liability" statute eliminates the need for fault. Further, the Fourth Circuit found that federal law requires that damages be allocated proportionally according to fault. State "strict liability" eliminates the federally-mandated proportionality analysis.

The Fourth Circuit concluded state law made changes to the substantive maritime law. While states can modify or

supplement federal maritime law, states cannot "flatly contradict it or deprive any person of a substantive federal right." *Id.* at 1226. The *Kellum* Court found that Maryland law changed substantive maritime law and concluded that federal maritime law preempted state law. *See also Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953) (superseded on other grounds) (In a personal injury suit, state contributory negligence law was preempted by federal maritime law of comparative negligence); *Garrett v. Moore–McCormack,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (In an action brought pursuant to the Jones Act, federal law preempted a state regulation on the burden of proof, a substantive right of the petitioner).

■ From these cases, we conclude that we must look at a number of factors to determine whether state law is preempted by federal maritime law.

1. Whether state law works a material prejudice to the characteristic features of general maritime law;

2. Whether state law interferes with the proper harmony and uniformity of federal law;

3. Whether state law attempts to change substantive maritime law;

4. Whether state law flatly contradicts federal law or deprives any person of a substantive federal right.

In this case, the Inn cites to no predicate facts from which we can conclude that the Commonwealth's right to regulate encroachment over its bottomlands is preempted by federal law. In fact, the Inn argued to the circuit court that federal maritime jurisdiction automatically preempts state law. Neither at the circuit court hearing, nor in its brief, did the Inn address any of the factors set forth above.

We must remember the structure is solely used for additional seating for the restaurant, due to seasonal increases in patrons. VMRC's order to remove the vessel in no way works a material prejudice, or any prejudice to the characteristic features of general maritime law, nor does it interfere with the

proper harmony and uniformity of federal law in its international and interstate relations. The sole effect of the order is a decrease in the Inn's revenue and number of patrons that can be seated at any given time during the tourist season. VMRC's removal order only affects a single vessel and has no broader implications. It did not interfere with the barge's navigation in navigable waters.

VMRC's order does not attempt to change substantive maritime law which generally regulates maritime transactions,[5] customs, duties, and trade, regulating navigation of navigable waters, injury to person or property caused by a vessel on navigable waters, Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901, Death on the High Seas Act, 46 U.S.C. § 30301, and the Jones Act, 46 U.S.C. § 688. This list is not exhaustive but illustrative of the nature of federal maritime law.

Federal maritime law does not preempt VMRC from ordering the removal of the vessel. In fact, the Federal Submerged Lands Act, 43 U.S.C. § 1311, recognizes the state's ownership of lands beneath navigable waters and allows the states to "manage, administer, lease, develop and use said lands and natural resources ... and subject to the provisions hereof...." 43 U.S.C. § 1311 carves out an exception to this general grant, dealing with navigation, flood control, and production of power, none of which applies here. In conformity with 43 U.S.C. § 1311, Code § 28.2–1203 prohibits the

---

5.    "Maritime transactions", as defined herein, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.
9 U.S.C. § 1.

encroachment upon or over rivers, ocean, and streams of the Commonwealth.

Thus we conclude that, under the facts of this case, federal maritime law did not preempt VMRC's authority to order the removal of the vessel.

Finally, VMRC assigns error to the circuit court's award of fees and costs to the Inn. The parties appear to agree that this issue rises or falls with our resolution of the other issues presented on appeal. Because we reverse and remand this case to the circuit court, we vacate the circuit court's award of fees and costs and remand for a determination of fees and costs, if any, based on Code § 2.2–4030.

## CONCLUSION

Having found that the circuit court erred in holding that VMRC did not have jurisdiction to order the removal of the vessel, we reverse and remand for the circuit court to determine the issues presented in the Inn's petition for appeal before the circuit court, to include the scope of Code § 28.2–1203.

*Reversed and remanded.*