Upon A Rehearing En Banc
HUFF, Judge.
This matter comes before this Court on a rehearing en banc from a published panel decision rendered on August 14, 2012. See Va. Marine Res. Comm’n v. Chincoteague Inn, 60 Va.App. 585, 731 S.E.2d 6 (2012). The Virginia Marine Resources Commission (“VMRC”) initially appealed an order of the Circuit Court of Accomack County (“circuit court”) holding that VMRC lacked jurisdiction to order Chincoteague Inn (“Inn”) to remove a vessel from over state-owned subaqueous bottomland. The three-judge panel of this Court reversed the circuit court holding that federal maritime law did not preempt VMRC’s authority to regulate state-owned subaqueous bottomland and, therefore, VMRC had authority to order the removal of the vessel.
By order dated September 18, 2012, we granted the Inn’s petition for rehearing en banc. Va. Marine Res. Comm’n v. Chincoteague Inn, 60 Va.App. 719, 732 S.E.2d 45 (2012). *375 Upon rehearing en banc, we hold that the circuit court did not err in holding that VMRC lacked jurisdiction to order the removal of a temporarily moored vessel from over state-owned subaqueous bottomlands. Therefore, we affirm the judgment of the circuit court.
I. BACKGROUND
At some point prior to June 8, 2010, the Inn borrowed a barge from BIC, Inc., moored it to the dock outside the Inn along the Chincoteague Channel, outfitted it with a new deck, tables, and chairs, and installed and connected the barge to shore power and water. The Inn did this with the intent of using the vessel[1] for four months as additional seating for its restaurant.
On June 8, 2010, another restaurant owner notified VMRC staff that the Inn had made this addition. VMRC staff conducted a site inspection on June 11, 2010, and determined that part of the vessel was over state-owned subaqueous bottomland. On June 15, 2010, VMRC sent a notice to comply to the Inn, through Raymond Britton (“Britton”), the manager of the Inn, regarding the portion of the vessel that was over state-owned subaqueous bottomland without a permit. Specifically, the letter notified the Inn that the “western 54-foot by 13.6-foot portion” of the “71.5-foot long by 13.6-foot wide floating platform/pier and a 30-foot by 33.5-foot floating platform with a 22-foot by 12-foot roof structure that is open on three sides” was within VMRC’s jurisdiction and needed to be removed within ten days of receipt of the letter. The letter stated further that the matter would be placed before the full Commission for an enforcement action if the Inn failed to comply within the time specified.
The Inn then submitted a joint permit application (“application”) to the Commission on June 18, 2010, for an after-the- *376 fact-permit for the entire vessel. By e-mail on June 22, 2010, VMRC notified the Inn that they would not process the Inn’s application until the structure was removed. VMRC sent a second e-mail to the Inn on June 24, 2010, asking whether the Inn was going to withdraw its application, reiterating that VMRC could not proceed with the application until the vessel was removed, and restating that the Inn’s failure to remove the vessel would result in a VMRC enforcement action. VMRC staff conducted another site inspection on June 28, 2010, and found that the vessel had not been removed and was secured to the pier with mooring lines.
On August 24, 2010, the Commission held a hearing on the Inn’s failure to comply. At the hearing, Britton testified that he had been in marine construction for about twenty-five years and that his company, BIC, Inc., owned several barges, one of which is the vessel at issue, and that the barges were moored at the Inn when they were not in use. With regard to the subject vessel, Britton testified that they installed new decking and a handrail on it. Britton also testified there was additional seating on the barge and two gangways from the restaurant to the barge, each connected to the restaurant so that the gangways could be raised. Britton then stated that on July 19, 2010, they disconnected the water and electricity lines, pulled the gangways up, removed the vessel from her slip by use of its push boat, traveled down the Chincoteague Channel to the old drawbridge, returned to the slip, moored it to the Inn’s dock, and reconnected the lines all within thirty-two minutes.
During the hearing, there was division among the Commissioners as to whether the barge was a vessel and whether the Commission had any authority over the vessel—regardless of whether it was a barge or floating platform. At the conclusion of the hearing, the Commission concluded that the “floating structure” was an unlawful use of state-owned subaqueous bottomland, pursuant to Code § 28.2-1203, and directed the Inn to remove the portion of the vessel under VMRC’s jurisdiction within ten days. The Commission made no express finding that the structure was a vessel. On August 26, 2010, *377 the Commission sent a letter to the Inn setting forth its holding and directing the removal of the portion of the vessel over state-owned subaqueous bottomlands.
On September 16, 2010, VMRC notified the Inn that it was violating the Commission’s order due to its failure to remove the vessel within the established time frame. VMRC then referred the matter to the Attorney General to petition the appropriate circuit court for an order requiring removal of part of the vessel as well as the assessment of civil penalties.
The Inn mailed its notice of appeal to VMRC on September 23, 2010. On appeal to the circuit court, the Inn argued that VMRC lacked jurisdiction under Code § 28.2-1203 to regulate a temporarily moored vessel floating over state-owned subaqueous bottomland and that federal maritime law precludes state regulation over a vessel in navigation.[2] In response, VMRC argued that the Commonwealth owned the subaqueous bottomland and VMRC had jurisdiction to regulate the vessel because VMRC’s scope of authority included regulating encroachments over state-owned subaqueous bottomlands pursuant to Code § 28.2-1203.
On October 14, 2011, the circuit court heard argument and accepted the Inn’s position, ruling that VMRC lacked jurisdiction over the vessel as its mooring was not a permanent attachment to land and it was capable of being moved from *378 place to place in navigable waters. The circuit court then deferred ruling on the Inn’s request for fees and costs. In its final order issued on December 20, 2011, the circuit court found that VMRC erred in determining that it had jurisdiction over the vessel and was not in compliance with the statutory authority and/or jurisdiction limitations set forth in Code § 2.2-4027. The circuit court also awarded the Inn its fees and costs since it had “substantially prevailed.”
On August 14, 2012, a panel of this Court reversed the circuit court’s decision holding that VMRC had jurisdiction to order the removal of the vessel, and reversing and remanding for the circuit court to determine the issues presented in the Inn’s petition for appeal to the circuit court, including the scope of Code § 28.2-1203. Va. Marine Res. Comm’n, 60 Va.App. at 599, 731 S.E.2d at 13. On appeal, the panel held that the issue was “whether federal maritime law preempts the state’s ability to order the removal of the structure” while noting that VMRC never ruled on federal preemption. Id. at 591, 731 S.E.2d at 9. Based on four factors, the panel held that federal law did not preempt VMRC from ordering the removal of the vessel pursuant to its right to regulate encroachments upon or over the state-owned subaqueous bottomlands. Id. at 597-99, 731 S.E.2d at 12. The panel also vacated the circuit court’s award of fees and costs to the Inn, and remanded for a determination of fees and costs, if any, based on Code § 2.2-4030. Id. at 599, 731 S.E.2d at 12-13.
On September 18, 2012, this Court granted the Inn’s petition for a rehearing en banc with regard to the issues raised by the Inn in the petition, stayed the mandate of the panel’s decision, and reinstated the appeal. Va. Marine Res. Comm’n, 60 Va.App. at 720, 732 S.E.2d at 46. This appeal followed.
II. STANDARD OF REVIEW
Judicial review of an agency decision is authorized by Code § 2.2-4027 of the Virginia Administrative Process Act. “Judicial review of an agency decision is limited to determin *379 ing ‘1. [w]hether the agency acted in accordance with law; 2. [w]hether the agency made a procedural error which was not harmless error; and 3. [wjhether the agency had sufficient evidential support for its findings of fact.’ ” Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va.App. 469, 480, 694 S.E.2d 290, 296 (2010) (alteration in original) (quoting Johnstov-Willis, Ltd. v. Kenley, 6 Va.App. 231, 241, 369 S.E.2d 1, 6 (1988)), aff'd, 283 Va. 1, 720 S.E.2d 138 (2012).
“On reviewing the claims of error, an agency’s factual determination is given substantial judicial deference, and is reviewed ‘only for whether they have support in substantial evidence.’ ” Id. (quoting Mazloumi v. Dep’t of Envtl. Quality, 55 Va.App. 204, 208, 684 S.E.2d 852, 854 (2009)). On appeal of an agency’s determination of law,
“where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency’s decision is entitled to special weight in the courts[, and] ... ‘judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of delegated discretion.’ ”
Evelyn v. Commonwealth, 46 Va.App. 618, 624, 621 S.E.2d 130, 133 (2005) (alteration in original) (quoting Johnston-Willis, 6 Va.App. at 244, 369 S.E.2d at 8).
“However, courts do not defer to an agency’s interpretation ‘[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law....’” Commonwealth ex rel. Va. State Water Control Bd., 56 Va.App. at 481, 694 S.E.2d at 296 (alteration in original) (quoting Johnston-Willis, 6 Va.App. at 243-44, 369 S.E.2d at 8). “An agency’s ‘legal interpretations of statutes’ is accorded no deference because ‘[w]e have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies.’ ” Id. *380 (quoting The Mattaponi Indian Tribe v. Commonwealth Dep’t of Envtl. Quality, 43 Va.App. 690, 707, 601 S.E.2d 667, 676 (2004) , affd in part, rev’d in part sub nom, Alliance to Save the Mattaponi v. Commonwealth Dep’t of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005) ).
[WJhere the issue involves a legal determination or statutory interpretation, this Court does a de novo review, especially if the statutory language is clear. We are required to construe the law as it is written. An erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute. When an agency’s statutory interpretation conflicts with the language of the statute or when the interpretation has not been consistently and regularly applied, the usual deference to an agency’s interpretation should be withheld.
Id. at 481-82, 694 S.E.2d at 296-97 (alteration in original) (internal quotation marks omitted) (citations omitted) (quoting Shippers’ Choice of Va., Inc. v. Smith, 52 Va.App. 34, 37-38, 660 S.E.2d 695, 696-97 (2008), rev’d on other grounds, 277 Va. 593, 674 S.E.2d 842 (2009)).
III. ANALYSIS
On appeal, VMRC contends that the circuit court’s ruling that VMRC lacked jurisdiction over the vessel should be reversed because the Commission has jurisdiction to order cessation of encroachments over state-owned subaqueous bottomlands and this jurisdiction is not preempted by federal maritime law particularly as it relates to floating additions to restaurants. The Inn argues, however, that the circuit court did not err because the scope of Code § 28.2-1203 does not create jurisdiction in VMRC to regulate a vessel either in transit or temporarily moored over state-owned subaqueous bottomland so as to require it to be permitted under Code §§ 28.2-1203 and -1204, or removed.
Before addressing whether federal law preempts state law, we must first determine if the statute grants VMRC jurisdic *381 tion to order the removal of a temporarily moored vessel. Thus, the threshold issue in this case is whether Code § 28.2-1203 provides VMRC jurisdiction over vessels temporarily moored over state-owned subaqueous bottomlands. In making this determination, we must look to the language of the statute and the legislature’s intent in enacting it. Evelyn, 46 Va.App. at 629-30, 621 S.E.2d at 136.
“In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature.” Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). “That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result.” Id. (citations omitted). “[Wjords and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest.”
Id. (quoting Woolfolk v. Commonwealth, 18 Va.App. 840, 847, 447 S.E.2d 530, 534 (1994)). Thus, “ ‘[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.... If[, however,] a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.’ ” Scott v. Commonwealth, 58 Va.App. 35, 48, 707 S.E.2d 17, 24 (2011) (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)).
Although Code § 28.2-1203 is part of the law that has been codified by the General Assembly and entrusted to VMRC to apply, the outcome of this appeal turns on the statutory interpretation of Code § 28.2-1203. Therefore, we do not give the agency’s interpretation of its jurisdiction under the statute any deference. See Commonwealth ex rel. Va. State Water Control Bd., 56 Va.App. at 481, 694 S.E.2d at 296 (quoting The Mattaponi Indian Tribe, 43 Va.App. at 707, 601 S.E.2d at 676). Furthermore, while the statute is penal, it “has a primarily regulatory, non-penal purpose and should be *382 construed liberally in favor of the public interest rather than against it.” Evelyn, 46 Va.App. at 631, 621 S.E.2d at 137.
In 1953, the United States Congress ceded title and ownership of lands beneath navigable waters within a state’s boundaries to that respective state, as well as the natural resources within such lands and waters.[3] Submerged Lands Act, 43 U.S.C. § 1311; see also Taylor v. Commonwealth, 102 Va. 759, 770, 47 S.E. 875, 879 (1904) (recognizing that “the navigable waters and the soil under them, within the territorial limits of a State, are the property of the State, to be controlled by the State, in its own discretion, for the benefit of the people of the State.” (citing McCready v. Virginia, 94 U.S. 391, 24 L.Ed. 248 (1877))). Pursuant to Code § 28.2-1200,
[a]ll the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth and may be used as a common by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.
See also Taylor, 102 Va. at 765-70, 47 S.E. at 877-80 (noting that the predecessor to this code section was not “an arbitrary assumption of right upon the part of the State,” but was merely a declaration of the common law).
Article XI, Section I of the Constitution of Virginia established the following policy regarding waters owned by the Commonwealth:
[t]o the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Common *383 wealth’s policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.
In furtherance of this policy, Article XI, Section II of the Constitution of Virginia provides that “the General Assembly may undertake the ... protection of its atmosphere, lands, and waters from pollution, impairment, or destruction, by agencies of the Commonwealth.... ”
In 1962, jurisdiction over the Commonwealth’s permit program to regulate encroachments on or over state-owned bottomlands was transferred from the Office of the Attorney General to VMRC. To that end, Code § 28.2-101 specifically provides that VMRC’s jurisdiction
shall include the Commonwealth’s territorial sea and extend to the fall line of all tidal rivers and streams except in the case of state-onmed bottomlands where jurisdiction extends throughout the Commonwealth. The Commission shall have jurisdiction over all commercial fishing and all marine fish, marine shellfish, marine organisms, and habitat in such areas. In waters of the Albemarle and Currituck watersheds, the Commission’s fisheries management jurisdiction is limited to the recreational and commercial harvest of blue crabs. The Commission’s jurisdiction shall also include the power to exercise regulatory authority over all structures and improvements built or proposed by riparian property owners in the Potomac River appurtenant to the shore of the Commonwealth.
(Emphasis added).
Code § 28.2-1204 sets forth VMRC’s authority over submerged lands to
1. Issue permits for all reasonable uses of state-owned bottomlands not authorized under subsection A of [Code] § 28.2-1203, including but not limited to, dredging, the taking and use of material, and the placement of wharves, bulkheads, and fill by owners of riparian land in the waters opposite their lands, provided such wharves, bulkheads, and *384 fill do not extend beyond any lawfully established bulkhead lines;
2. Issue permits to recover underwater historic property pursuant to [Code] §§ 10.1-2214 and 28.2-1203; and
3. Establish bulkhead and private pier lines on or over the bays, rivers, creeks, streams, and shores of the ocean which are owned by or subject to the jurisdiction of the Commonwealth for this purpose, and to issue and publish maps and plats showing these lines; however, these lines shall not conflict with those established by the United States Army Corps of Engineers.
Code § 28.2-1203(A), titled “[u]nlawful use of subaqueous beds; penalty,” provides, in pertinent part,
[i]t shall be unlawful for any person to build, dump, trespass or encroach upon or over, or take or use any materials from the beds of the bays, ocean, rivers, streams, or creeks which are the property of the Commonwealth, unless such act is performed pursuant to a permit issued by the Commission ....
In exercising its authority to grant or deny a permit, Code § 28.2-1205(A) directs VMRC to be guided by Article XI, Section I of the Constitution of Virginia, to consider the public and private benefits of proposed projects as well as the effects of the projects on a list of factors, and to exercise its authority consistent with the public trust doctrine as defined by common law. In Virginia, the public trust doctrine is as follows:
“The state holds the land lying beneath public waters as trustee for the benefit of all citizens. As trustee, the state is responsible for proper management of the resource to ensure the preservation and protection of all appropriate current and potential future uses, including potentially conflicting uses, by the public.”
Palmer v. Commonwealth Marine Res. Comm’n, 48 Va.App. 78, 88-89, 628 S.E.2d 84, 89-90 (2006) (quoting Virginia Marine Resources Commission, Subaqueous Guidelines, 21 Va. Reg. Regs. 1708 (Feb. 21, 2005)). Thus, in determining the legislative intent, consideration of the public trust doctrine is *385 proper. See Evelyn, 46 Va.App. at 631 n. 3, 621 S.E.2d at 137 n. 3 (“Thus, the Constitution makes clear it is entirely appropriate for the VMRC and judiciary to consider the legislature’s express duty to ‘safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in trust by it for the benefit of the public as conferred by the public trust doctrine and the Constitution of Virginia,’ Code § 28.2-1205(A), when interpreting and applying all legislative enactments, including Code § [ ] 28.2-1203.... ”).
It is within this context that we examine the meaning of Code § 28.2-1203. As noted above, Code § 28.2-101 specifically provides that VMRC has jurisdiction over state-owned subaqueous bottomlands. Pursuant to Code §§ 28.2-1203, and -1204, VMRC’s jurisdiction includes its authority to require permits from any person who “build[s], dump[s], trespass[es] or encroach[es] upon or over, or take[s] or use[s] any materials from the beds of the bays, ocean, rivers, streams, or creeks which are the property of the Commonwealth,.... ” (Emphasis added). While Code § 28.2-1203(A) makes it unlawful, absent the issuance of a permit, for a person to “encroach upon or over” state-owned subaqueous bottomlands, it does not define the term “encroach.”
Webster’s Third International Dictionary defines “encroach” as “to enter by gradual steps or by stealth into the possessions or rights of another” or “to advance beyond desirable or normal limits.” Webster’s Third International Dictionary 747 (2002). Black’s Law Dictionary also defines “encroach” as “[t]o enter by gradual steps or stealth into the possessions or rights of another,” but also defines it as “[t]o gain or intrude unlawfully upon another’s lands, property, or authority.” Black’s Law Dictionary 607 (9th ed.2009). Thus, when applying the plain meaning of the word in conjunction with the legislative intent behind the statute, one must be unlawfully over the state-owned bottomlands such that it violates the right of “all the people of the Commonwealth” to use the bottomlands “for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish,” Code § 28.2-1200, and prohibits the Commonwealth from properly manag *386 ing the bottomlands in order for the action to constitute an encroachment under Code § 28.2-1203.[4]
Although a portion of the vessel was temporarily moored over state-owned bottomlands, it was not unlawfully encroaching over the bottomlands such that it violated the rights of the people of the Commonwealth to use the bottomlands. Neither did it interfere with VMRC’s management of state-owned bottomlands or fish and shellfish habitats. The focus of Code § 28.2-1203 is to ensure the continued use and enjoyment of the bottomlands consistent with the Commonwealth’s policy as well as the public trust doctrine. To that end, VMRC is authorized to regulate and require permits where such use of the bottomlands is in contravention of Code § 28.2-1203. The statute, however, does not require an individual temporarily mooring a vessel over bottomlands, without more, to first obtain a permit nor did the legislature intend a temporarily moored vessel to constitute an “encroachment” requiring a permit. If that were the case, every vessel owner would be in jeopardy whenever they were temporarily moored over state-owned bottomlands.
Furthermore, if the statute authorized VMRC to require a permit for a vessel every time it was temporarily moored, it would be impossible for VMRC to implement as vessels can move and stop over the bottomlands numerous times in one day. In addition, under VMRC’s sweeping conception of “encroachment,” any owner of a vessel temporarily moored over state-owned bottomland who did not obtain a permit from VMRC would be subject to a fine of up to $25,000 per day and *387 prosecution for a Class 1 misdemeanor. See Code §§ 28.2-1203(B) (Class 1 misdemeanor); -1211 (injunction against violations of Code § 28.2-1203); -1212 (monitoring, inspections, compliance, and restoration); -1213 (penalties). Accordingly, this Court declines to utilize such a broad interpretation as it would produce an absurd result in contravention to the legislature’s intent, and holds that a vessel, such as the one at issue, temporarily moored over state-owned bottom-lands is not an encroachment—an unlawful intrusion—requiring a permit.
IV. CONCLUSION
Based on the foregoing, this Court holds that the circuit court did not err in holding that VMRC lacked jurisdiction under Code § 28.2-1203 to order the removal of the temporarily moored vessel. Because we hold that the circuit court did not err in its ruling on jurisdiction, we need not address whether federal law preempts state law as there is no state law applicable. Accordingly, we affirm the circuit court’s order including its award of fees and costs to the Inn.

Affirmed.

. At oral argument, VMRC conceded that the barge in question was a "vessel.” “The word ‘vessel’ includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.” 1 U.S.C. § 3.

. A temporarily moored maritime vessel is a vessel in navigation. See Stewart v. Dutra Constr. Co., 543 U.S. 481, 490, 493-94, 496, 125 S.Ct. 1118, 1124, 1126-27, 1128, 160 L.Ed.2d 932 (2005) (noting that the focus of whether a vessel is "in navigation” is on whether the watercraft is “capable of being used” for maritime transport and whether such use is a practical possibility or merely a theoretical one); see also, Chandas, Inc. v. Latsis, 515 U.S. 347, 373, 115 S.Ct. 2172, 2192, 132 L.Ed.2d 314 (1995) (“ '[A] vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside.’ ” (quoting DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1121 (1st Cir.1992))); Leathers v. Blessing, 105 U.S. 626, 629, 26 L.Ed. 1192 (1882) ("Although the transit of the vessel was completed, she was still a vessel occupied in the business of navigation at the time. The facts, that she was securely moored to the wharf, and had communication with the shore by a gang-plank, did not make her a part of the land or deprive her of the character of a water-borne vessel.”).

. In doing so, however, the federal government reserved the power to regulate the bottomlands for the "constitutional purposes of commerce, navigation, national defense, and international affairs,....” Submerged Lands Act of 1953, 43 U.S.C. § 1314(a) (2006).

. Although not referenced during oral argument and only mentioned in passing on brief, VMRC's authority to regulate a "trespass ... upon or over” state-owned subaqueous bottomlands would similarly fail. Code § 28.2-1203. Webster's Third International Dictionary defines "trespass" as follows: "to enter unlawfully upon the land of another.” Webster’s, supra, at 2439. Black’s Law Dictionary defines "trespass” as "[a]n unlawful act committed against the person or property of another; esp., wrongful entry on another's real property.” Black’s, supra, at 1642. Accordingly, VMRC's jurisdiction over "trespass” would require an unlawful contact or connection to or over the bottomland, neither of which occurred here for the same reasons set forth above.