Present:  Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston,
          McCullough, Huff and Chafin
Argued at Richmond, Virginia


VIRGINIA MARINE RESOURCES COMMISSION

                                                              OPINION BY
v.       Record No. 0086-12-1                            JUDGE GLEN A. HUFF
                                                            JANUARY 8, 2013

CHINCOTEAGUE INN AND RAYMOND BRITTON


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Frederick B. Lowe, Judge

        Paul Kugelman, Jr., Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General; Elizabeth A. Andrews, Senior
        Assistant Attorney General; David C. Grandis, Assistant Attorney
        General, on briefs), for appellant.

        Jon C. Poulson for appellees.


        This matter comes before this Court on a rehearing en banc from a published panel

decision rendered on August 14, 2012.  See Va. Marine Res. Comm'n v. Chincoteague Inn, 60

Va. App. 585, 731 S.E.2d 6 (2012).  The Virginia Marine Resources Commission ("VMRC")

initially appealed an order of the Circuit Court of Accomack County ("circuit court") holding

that VMRC lacked jurisdiction to order Chincoteague Inn ("Inn") to remove a vessel from over

state-owned subaqueous bottomland.  The three-judge panel of this Court reversed the circuit

court holding that federal maritime law did not preempt VMRC's authority to regulate

state-owned subaqueous bottomland and, therefore, VMRC had authority to order the removal of

the vessel.

        By order dated September 18, 2012, we granted the Inn's petition for rehearing en banc.

Va. Marine Res. Comm'n v. Chincoteague Inn, 60 Va. App. 719, 732 S.E.2d 45 (2012).  Upon

rehearing en banc, we hold that the circuit court did not err in holding that VMRC lacked jurisdiction to order the removal of a temporarily moored vessel from over state-owned subaqueous bottomlands. Therefore, we affirm the judgment of the circuit court.

## I. BACKGROUND

At some point prior to June 8, 2010, the Inn borrowed a barge from BIC, Inc., moored it to the dock outside the Inn along the Chincoteague Channel, outfitted it with a new deck, tables, and chairs, and installed and connected the barge to shore power and water. The Inn did this with the intent of using the vessel[1] for four months as additional seating for its restaurant.

On June 8, 2010, another restaurant owner notified VMRC staff that the Inn had made this addition. VMRC staff conducted a site inspection on June 11, 2010, and determined that part of the vessel was over state-owned subaqueous bottomland. On June 15, 2010, VMRC sent a notice to comply to the Inn, through Raymond Britton ("Britton"), the manager of the Inn, regarding the portion of the vessel that was over state-owned subaqueous bottomland without a permit. Specifically, the letter notified the Inn that the "western 54-foot by 13.6-foot portion" of the "71.5-foot long by 13.6-foot wide floating platform/pier and a 30-foot by 33.5-foot floating platform with a 22-foot by 12-foot roof structure that is open on three sides" was within VMRC's jurisdiction and needed to be removed within ten days of receipt of the letter. The letter stated further that the matter would be placed before the full Commission for an enforcement action if the Inn failed to comply within the time specified.

The Inn then submitted a joint permit application ("application") to the Commission on June 18, 2010, for an after-the-fact-permit for the entire vessel. By e-mail on June 22, 2010, VMRC notified the Inn that they would not process the Inn's application until the structure was

_____

[1] At oral argument, VMRC conceded that the barge in question was a "vessel." "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.

- 2 -

removed. VMRC sent a second e-mail to the Inn on June 24, 2010, asking whether the Inn was going to withdraw its application, reiterating that VMRC could not proceed with the application until the vessel was removed, and restating that the Inn's failure to remove the vessel would result in a VMRC enforcement action. VMRC staff conducted another site inspection on June 28, 2010, and found that the vessel had not been removed and was secured to the pier with mooring lines.

On August 24, 2010, the Commission held a hearing on the Inn's failure to comply. At the hearing, Britton testified that he had been in marine construction for about twenty-five years and that his company, BIC, Inc., owned several barges, one of which is the vessel at issue, and that the barges were moored at the Inn when they were not in use. With regard to the subject vessel, Britton testified that they installed new decking and a handrail on it. Britton also testified there was additional seating on the barge and two gangways from the restaurant to the barge, each connected to the restaurant so that the gangways could be raised. Britton then stated that on July 19, 2010, they disconnected the water and electricity lines, pulled the gangways up, removed the vessel from her slip by use of its push boat, traveled down the Chincoteague Channel to the old drawbridge, returned to the slip, moored it to the Inn's dock, and reconnected the lines all within thirty-two minutes.

During the hearing, there was division among the Commissioners as to whether the barge was a vessel and whether the Commission had any authority over the vessel – regardless of whether it was a barge or floating platform. At the conclusion of the hearing, the Commission concluded that the "floating structure" was an unlawful use of state-owned subaqueous bottomland, pursuant to Code § 28.2-1203, and directed the Inn to remove the portion of the vessel under VMRC's jurisdiction within ten days. The Commission made no express finding that the structure was a vessel. On August 26, 2010, the Commission sent a letter to the Inn

setting forth its holding and directing the removal of the portion of the vessel over state-owned subaqueous bottomlands.

On September 16, 2010, VMRC notified the Inn that it was violating the Commission's order due to its failure to remove the vessel within the established time frame. VMRC then referred the matter to the Attorney General to petition the appropriate circuit court for an order requiring removal of part of the vessel as well as the assessment of civil penalties.

The Inn mailed its notice of appeal to VMRC on September 23, 2010. On appeal to the circuit court, the Inn argued that VMRC lacked jurisdiction under Code § 28.2-1203 to regulate a temporarily moored vessel floating over state-owned subaqueous bottomland and that federal maritime law precludes state regulation over a vessel in navigation.[2] In response, VMRC argued that the Commonwealth owned the subaqueous bottomland and VMRC had jurisdiction to regulate the vessel because VMRC's scope of authority included regulating encroachments over state-owned subaqueous bottomlands pursuant to Code § 28.2-1203.

On October 14, 2011, the circuit court heard argument and accepted the Inn's position, ruling that VMRC lacked jurisdiction over the vessel as its mooring was not a permanent attachment to land and it was capable of being moved from place to place in navigable waters. The circuit court then deferred ruling on the Inn's request for fees and costs. In its final order issued on December 20, 2011, the circuit court found that VMRC erred in determining that it had

---

[2] A temporarily moored maritime vessel is a vessel in navigation. See Stewart v. Dutra Constr. Co., 543 U.S. 481, 490, 493-94, 496 (2005) (noting that the focus of whether a vessel is "in navigation" is on whether the watercraft is "capable of being used" for maritime transport and whether such use is a practical possibility or merely a theoretical one); see also, Chandris, Inc. v. Latsis, 515 U.S. 347, 373 (1995) ("'[A] vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside.'" (quoting DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1121 (1st Cir. 1992))); Leathers v. Blessing, 105 U.S. 626, 629 (1882) ("[A]lthough the transit of the vessel was completed, she was still a vessel occupied in the business of navigation at the time. The facts, that she was securely moored to the wharf, and had communication with the shore by a gang-plank, did not make her a part of the land or deprive her of the character of a water-borne vessel.").

jurisdiction over the vessel and was not in compliance with the statutory authority and/or jurisdiction limitations set forth in Code § 2.2-4027. The circuit court also awarded the Inn its fees and costs since it had "substantially prevailed."

On August 14, 2012, a panel of this Court reversed the circuit court's decision holding that VMRC had jurisdiction to order the removal of the vessel, and reversing and remanding for the circuit court to determine the issues presented in the Inn's petition for appeal to the circuit court, including the scope of Code § 28.2-1203. Va. Marine Res. Comm'n, 60 Va. App. at 599, 731 S.E.2d at 13. On appeal, the panel held that the issue was "whether federal maritime law preempts the state's ability to order the removal of the structure" while noting that VMRC never ruled on federal preemption. Id. at 591, 731 S.E.2d at 9. Based on four factors, the panel held that federal law did not preempt VMRC from ordering the removal of the vessel pursuant to its right to regulate encroachments upon or over the state-owned subaqueous bottomlands. Id. at 597-99, 731 S.E.2d at 12. The panel also vacated the circuit court's award of fees and costs to the Inn, and remanded for a determination of fees and costs, if any, based on Code § 2.2-4030. Id. at 599, 731 S.E.2d at 12-13.

On September 18, 2012, this Court granted the Inn's petition for a rehearing en banc with regard to the issues raised by the Inn in the petition, stayed the mandate of the panel's decision, and reinstated the appeal. Va. Marine Res. Comm'n, 60 Va. App. at 720, 732 S.E.2d at 46. This appeal followed.

## II. STANDARD OF REVIEW

Judicial review of an agency decision is authorized by Code § 2.2-4027 of the Virginia Administrative Process Act. "Judicial review of an agency decision is limited to determining '1. [w]hether the agency acted in accordance with law; 2. [w]hether the agency made a procedural error which was not harmless error; and 3. [w]hether the agency had sufficient

evidential support for its findings of fact.'" Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 480, 694 S.E.2d 290, 296 (2010) (alteration in original) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 241, 369 S.E.2d 1, 6 (1988)), aff'd, 283 Va. 1, 720 S.E.2d 138 (2012).

"'On reviewing the claims of error, an agency's factual determination is given substantial judicial deference, and is reviewed 'only for whether they have support in substantial evidence.'" Id. (quoting Mazloumi v. Dep't of Envtl. Quality, 55 Va. App. 204, 208, 684 S.E.2d 852, 854 (2009)). On appeal of an agency's determination of law,

> "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . 'judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'"

Evelyn v. Commonwealth, 46 Va. App. 618, 624, 621 S.E.2d 130, 133 (2005) (alteration in original) (quoting Johnston-Willis, 6 Va. App. at 244, 369 S.E.2d at 8).

"However, courts do not defer to an agency's interpretation '[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law . . . .'" Commonwealth ex rel. Va. State Water Control Bd., 56 Va. App. at 481, 694 S.E.2d at 296 (alteration in original) (quoting Johnston-Willis, 6 Va. App. at 243-44, 369 S.E.2d at 8). "An agency's 'legal interpretations of statutes' is accorded no deference because '[w]e have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies.'" Id. (quoting The Mattaponi Indian Tribe v. Commonwealth Dep't of Envtl. Quality, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004), aff'd in part, rev'd in part sub nom, Alliance

to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005)).

> [W]here the issue involves a legal determination or statutory interpretation, this Court does a *de novo* review, especially if the statutory language is clear. We are required to construe the law as it is written. An erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute. When an agency's statutory interpretation conflicts with the language of the statute or when the interpretation has not been consistently and regularly applied, the usual deference to an agency's interpretation should be withheld.

Id. at 481-82, 694 S.E.2d at 296-97 (alteration in original) (internal quotation marks omitted) (citations omitted) (quoting Shippers' Choice of Va., Inc. v. Smith, 52 Va. App. 34, 37-38, 660 S.E.2d 695, 696-97 (2008), rev'd on other grounds, 277 Va. 593, 674 S.E.2d 842 (2009)).

## III. ANALYSIS

On appeal, VMRC contends that the circuit court's ruling that VMRC lacked jurisdiction over the vessel should be reversed because the Commission has jurisdiction to order cessation of encroachments over state-owned subaqueous bottomlands and this jurisdiction is not preempted by federal maritime law particularly as it relates to floating additions to restaurants. The Inn argues, however, that the circuit court did not err because the scope of Code § 28.2-1203 does not create jurisdiction in VMRC to regulate a vessel either in transit or temporarily moored over state-owned subaqueous bottomland so as to require it to be permitted under Code §§ 28.2-1203 and -1204, or removed.

Before addressing whether federal law preempts state law, we must first determine if the statute grants VMRC jurisdiction to order the removal of a temporarily moored vessel. Thus, the threshold issue in this case is whether Code § 28.2-1203 provides VMRC jurisdiction over vessels temporarily moored over state-owned subaqueous bottomlands. In making this

determination, we must look to the language of the statute and the legislature's intent in enacting it. Evelyn, 46 Va. App. at 629-30, 621 S.E.2d at 136.

> "In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result." Id. (citations omitted). "[W]ords and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest."

Id. (quoting Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994)). Thus, "'[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language. . . . If[, however,] a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.'" Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)).

Although Code § 28.2-1203 is part of the law that has been codified by the General Assembly and entrusted to VMRC to apply, the outcome of this appeal turns on the statutory interpretation of Code § 28.2-1203. Therefore, we do not give the agency's interpretation of its jurisdiction under the statute any deference. See Commonwealth ex rel. Va. State Water Control Bd., 56 Va. App. at 481, 694 S.E.2d at 296 (quoting The Mattaponi Indian Tribe, 43 Va. App. at 707, 601 S.E.2d at 676). Furthermore, while the statute is penal, it "has a primarily regulatory, non-penal purpose and should be construed liberally in favor of the public interest rather than against it." Evelyn, 46 Va. App. at 631, 621 S.E.2d at 137.

In 1953, the United States Congress ceded title and ownership of lands beneath navigable waters within a state's boundaries to that respective state, as well as the natural resources within

such lands and waters.[3]  Submerged Lands Act, 43 U.S.C. § 1311; see also Taylor v. Commonwealth, 102 Va. 759, 770, 47 S.E. 875, 879 (1904) (recognizing that "the navigable waters and the soil under them, within the territorial limits of a State, are the property of the State, to be controlled by the State, in its own discretion, for the benefit of the people of the State." (citing McCready v. Virginia, 94 U.S. 391 (1877))).  Pursuant to Code § 28.2-1200,

> [a]ll the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth and may be used as a common by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.

See also Taylor, 102 Va. at 765-70, 47 S.E. at 877-80 (noting that the predecessor to this code section was not "an arbitrary assumption of right upon the part of the State," but was merely a declaration of the common law).

Article XI, Section I of the Constitution of Virginia established the following policy regarding waters owned by the Commonwealth:

> [t]o the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings.  Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.

In furtherance of this policy, Article XI, Section II of the Constitution of Virginia provides that "the General Assembly may undertake the . . . protection of its atmosphere, lands, and waters from pollution, impairment, or destruction, by agencies of the Commonwealth . . . ."

---

[3] In doing so, however, the federal government reserved the power to regulate the bottomlands for the "constitutional purposes of commerce, navigation, national defense, and international affairs, . . . ."  Submerged Lands Act of 1953, 43 U.S.C. § 1314(a) (2006).

In 1962, jurisdiction over the Commonwealth's permit program to regulate encroachments on or over state-owned bottomlands was transferred from the Office of the Attorney General to VMRC. To that end, Code § 28.2-101 specifically provides that VMRC's jurisdiction

> shall include the Commonwealth's territorial sea and extend to the fall line of all tidal rivers and streams *except in the case of state-owned bottomlands where jurisdiction extends throughout the Commonwealth.* The Commission shall have jurisdiction over all commercial fishing and all marine fish, marine shellfish, marine organisms, and habitat in such areas. In waters of the Albemarle and Currituck watersheds, the Commission's fisheries management jurisdiction is limited to the recreational and commercial harvest of blue crabs. The Commission's jurisdiction shall also include the power to exercise regulatory authority over all structures and improvements built or proposed by riparian property owners in the Potomac River appurtenant to the shore of the Commonwealth.

(Emphasis added).

Code § 28.2-1204 sets forth VMRC's authority over submerged lands to

> 1. Issue permits for all reasonable uses of state-owned bottomlands not authorized under subsection A of [Code] § 28.2-1203, including but not limited to, dredging, the taking and use of material, and the placement of wharves, bulkheads, and fill by owners of riparian land in the waters opposite their lands, provided such wharves, bulkheads, and fill do not extend beyond any lawfully established bulkhead lines;
>
> 2. Issue permits to recover underwater historic property pursuant to [Code] §§ 10.1-2214 and 28.2-1203; and
>
> 3. Establish bulkhead and private pier lines on or over the bays, rivers, creeks, streams, and shores of the ocean which are owned by or subject to the jurisdiction of the Commonwealth for this purpose, and to issue and publish maps and plats showing these lines; however, these lines shall not conflict with those established by the United States Army Corps of Engineers.

Code § 28.2-1203(A), titled "[u]nlawful use of subaqueous beds; penalty," provides, in pertinent part,

> [i]t shall be unlawful for any person to build, dump, trespass or encroach upon or over, or take or use any materials from the beds

of the bays, ocean, rivers, streams, or creeks which are the property
of the Commonwealth, unless such act is performed pursuant to a
permit issued by the Commission . . . .

In exercising its authority to grant or deny a permit, Code § 28.2-1205(A) directs VMRC to be guided by Article XI, Section I of the Constitution of Virginia, to consider the public and private benefits of proposed projects as well as the effects of the projects on a list of factors, and to exercise its authority consistent with the public trust doctrine as defined by common law. In Virginia, the public trust doctrine is as follows:

"The state holds the land lying beneath public waters as trustee for
the benefit of all citizens. As trustee, the state is responsible for
proper management of the resource to ensure the preservation and
protection of all appropriate current and potential future uses,
including potentially conflicting uses, by the public."

Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 88-89, 628 S.E.2d 84, 89-90 (2006) (quoting Virginia Marine Resources Commission, Subaqueous Guidelines, 21 Va. Reg. Regs. 1708 (Feb. 21, 2005)). Thus, in determining the legislative intent, consideration of the public trust doctrine is proper. See Evelyn, 46 Va. App. at 631 n.3, 621 S.E.2d at 137 n.3 ("Thus, the Constitution makes clear it is entirely appropriate for the VMRC and judiciary to consider the legislature's express duty to 'safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in trust by it for the benefit of the public as conferred by the public trust doctrine and the Constitution of Virginia,' Code § 28.2-1205(A), when interpreting and applying *all* legislative enactments, including Code §[] 28.2-1203 . . . .").

It is within this context that we examine the meaning of Code § 28.2-1203. As noted above, Code § 28.2-101 specifically provides that VMRC has jurisdiction over state-owned subaqueous bottomlands. Pursuant to Code §§ 28.2-1203, and -1204, VMRC's jurisdiction includes its authority to require permits from any person who "build[s], dump[s], trespass[es] *or encroach[es] upon or over*, or take[s] or use[s] any materials from the beds of the bays, ocean,

- 11 -

rivers, streams, or creeks which are the property of the Commonwealth, . . . ." (Emphasis added). While Code § 28.2-1203(A) makes it unlawful, absent the issuance of a permit, for a person to "encroach upon or over" state-owned subaqueous bottomlands, it does not define the term "encroach."

Webster's Third International Dictionary defines "encroach" as "to enter by gradual steps or by stealth into the possessions or rights of another" or "to advance beyond desirable or normal limits." Webster's Third International Dictionary 747 (2002). Black's Law Dictionary also defines "encroach" as "[t]o enter by gradual steps or stealth into the possessions or rights of another," but also defines it as "[t]o gain or intrude unlawfully upon another's lands, property, or authority." Black's Law Dictionary 607 (9th ed. 2009). Thus, when applying the plain meaning of the word in conjunction with the legislative intent behind the statute, one must be unlawfully over the state-owned bottomlands such that it violates the right of "all the people of the Commonwealth" to use the bottomlands "for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish," Code § 28.2-1200, and prohibits the Commonwealth from properly managing the bottomlands in order for the action to constitute an encroachment under Code § 28.2-1203.[4]

Although a portion of the vessel was temporarily moored over state-owned bottomlands, it was not unlawfully encroaching over the bottomlands such that it violated the rights of the people of the Commonwealth to use the bottomlands. Neither did it interfere with VMRC's

_____

[4] Although not referenced during oral argument and only mentioned in passing on brief, VMRC's authority to regulate a "trespass . . . upon or over" state-owned subaqueous bottomlands would similarly fail. Code § 28.2-1203. Webster's Third International Dictionary defines "trespass" as follows: "to enter unlawfully upon the land of another." Webster's, supra, at 2439. Black's Law Dictionary defines "trespass" as "[a]n unlawful act committed against the person or property of another; esp., wrongful entry on another's real property." Black's, supra, at 1642. Accordingly, VMRC's jurisdiction over "trespass" would require an unlawful contact or connection to or over the bottomland, neither of which occurred here for the same reasons set forth above.

management of state-owned bottomlands or fish and shellfish habitats. The focus of Code § 28.2-1203 is to ensure the continued use and enjoyment of the bottomlands consistent with the Commonwealth's policy as well as the public trust doctrine. To that end, VMRC is authorized to regulate and require permits where such use of the bottomlands is in contravention of Code § 28.2-1203. The statute, however, does not require an individual temporarily mooring a vessel over bottomlands, without more, to first obtain a permit nor did the legislature intend a temporarily moored vessel to constitute an "encroachment" requiring a permit. If that were the case, every vessel owner would be in jeopardy whenever they were temporarily moored over state-owned bottomlands.

Furthermore, if the statute authorized VMRC to require a permit for a vessel every time it was temporarily moored, it would be impossible for VMRC to implement as vessels can move and stop over the bottomlands numerous times in one day. In addition, under VMRC's sweeping conception of "encroachment," any owner of a vessel temporarily moored over state-owned bottomland who did not obtain a permit from VMRC would be subject to a fine of up to $25,000 per day and prosecution for a Class 1 misdemeanor. See Code §§ 28.2-1203(B) (Class 1 misdemeanor); -1211 (injunction against violations of Code § 28.2-1203); -1212 (monitoring, inspections, compliance, and restoration); -1213 (penalties). Accordingly, this Court declines to utilize such a broad interpretation as it would produce an absurd result in contravention to the legislature's intent, and holds that a vessel, such as the one at issue, temporarily moored over state-owned bottomlands is not an encroachment – an unlawful intrusion – requiring a permit.

## IV. CONCLUSION

Based on the foregoing, this Court holds that the circuit court did not err in holding that VMRC lacked jurisdiction under Code § 28.2-1203 to order the removal of the temporarily moored vessel. Because we hold that the circuit court did not err in its ruling on jurisdiction, we

- 13 -

need not address whether federal law preempts state law as there is no state law applicable.

Accordingly, we affirm the circuit court's order including its award of fees and costs to the Inn.

<u>Affirmed.</u>

Elder, Frank, Humphreys, and Petty, JJ., dissenting.

We dissent for the reasons stated in the panel opinion.  <u>See</u> <u>Va. Marine Res. Comm'n v.</u> <u>Chincoteague Inn</u>, 60 Va. App. 585, 731 S.E.2d 6 (2012).

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **18th** *day of* **September, 2012**.

Virginia Marine Resources Commission, Appellant,

against        Record No. 0086-12-1
                 Circuit Court No. 001-CL0000399

Chincoteague Inn and
   Raymond Britton, Appellees.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder Frank, Humphreys, Kelsey, Petty, Beales, Alston, McCullough, Huff and Chafin

On August 27, 2012 came the appellees, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 14, 2012, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on August 14, 2012 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellees shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of

this Court. The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe

Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:   Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


VIRGINIA MARINE RESOURCES COMMISSION

                                                              OPINION BY
v.        Record No. 0086-12-1                        JUDGE ROBERT P. FRANK
                                                              AUGUST 14, 2012

CHINCOTEAGUE INN AND RAYMOND BRITTON


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Frederick B. Lowe, Judge

Paul Kugelman, Jr., Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Elizabeth A. Andrews, Senior
Assistant Attorney General; David C. Grandis, Assistant Attorney
General, on briefs), for appellant.

Jon C. Poulson for appellees.


Appellant, the Virginia Marine Resources Commission (VMRC), appeals from an order

of the circuit court of Accomack County, holding that VMRC lacked jurisdiction to order

appellee, the Chincoteague Inn (the Inn), to remove a floating platform from over state-owned

bottomland. VMRC argues the circuit court erred in ruling that VMRC considered the floating

addition a vessel where VMRC made no such determination. VMRC also alleges the circuit

court erred in holding that VMRC had no jurisdiction to order the removal of the floating

platform. Finally, VMRC assigns error to the circuit court's award of fees and costs to the Inn.

For the reasons stated, we reverse and remand.

## PROCEDURAL HISTORY

On June 15, 2010, VMRC wrote to Raymond Britton, as manager of the Inn, notifying

him that he needed to remove a portion of an unauthorized floating platform next to the Inn,

because the platform was in violation of Code § 28.2-1212(B). VMRC subsequently brought the matter before its Commission for enforcement action.

On August 24, 2010, the Commission held a hearing and heard argument. By letter dated August 26, 2010, VMRC informed the Inn that the Commission found the floating addition to be an unlawful use of state-owned bottomland, in violation of Code § 28.2-1203, and ordered the portion of the platform over state-owned bottomland to be removed within ten days.

The Inn mailed a notice of appeal on September 23, 2010. On October 14, 2011, the circuit court of Accomack County heard the appeal and ruled the VMRC lacked jurisdiction over the floating platform. At that time, the circuit court deferred ruling on the Inn's request for fees and costs.

The circuit court issued its final order on December 20, 2011, finding that VMRC lacked jurisdiction to order the removal of the floating platform. The circuit court also ruled that the Inn had substantially prevailed and awarded attorney's fees and costs.

## BACKGROUND

In June of 2010, VMRC learned that a large floating platform had been placed adjacent to the Inn and was reportedly over state-owned bottomland. VMRC conducted a site inspection on June 11, 2010 and determined that at least part of the platform was not over state-owned bottomland. On June 15, VMRC sent the Inn a notice to comply, through Britton, regarding the unauthorized portion of the floating platform. The notice gave the Inn ten days to remove the illegal portion of the platform.

On June 22, VMRC sent another letter to the Inn, stating that failure to remove the floating platform would result in VMRC enforcement action. A site inspection on June 28 showed that the platform had not been removed.

VMRC held a hearing on August 24. At the hearing, Britton testified that the floating platform had a bar, tables, and a gangplank leading to the Inn's restaurant. Britton intended to use the platform for four months, to accommodate seasonal restaurant and bar overflow. Britton also testified that the platform was a barge normally used in his construction business and therefore was a vessel, noting that on July 19, 2010, the barge was disconnected from electric and water lines, taken out of its slip by its normal push boat, taken up Chincoteague Channel to the old drawbridge, then returned to its slip and reconnected, all in 32 minutes.

After considerable debate over whether the Commission had jurisdiction over a vessel, the Commission ultimately concluded that the "floating structure" was an unlawful use of state-owned bottomland and directed the Inn to remove the offending portion of the platform under VMRC's jurisdiction within ten days. The Commission never made a finding that the structure was a vessel.

On September 16, 2010, VMRC notified the Inn that because it had not removed the platform from the Inn, it was violating the Commission's order. VMRC then referred the matter to the Attorney General to petition the appropriate circuit court for an order requiring removal of part of the platform, as well as the assessment of civil penalties.

The Inn mailed a notice of appeal to VMRC on September 23, 2010. On appeal to the circuit court, Britton argued that VMRC lacked jurisdiction over a temporarily moored barge or vessel because federal maritime law preempts state regulation over any vessel. On October 14, 2011, the circuit court heard argument and accepted the Inn's position, ruling that VMRC lacked jurisdiction over the platform adjacent to the Inn, as it was moored and docked, not permanently

attached to land, and because it was capable of being moved from place to place in navigable waters.

This appeal follows.[1]

ANALYSIS

VMRC first contends the circuit court erred when it ruled that VMRC considered the floating addition a vessel where VMRC made no such determination and where making this determination is beyond the scope of a circuit court's review of an administration case decision. The Inn argues that this issue is waived. We agree with the Inn that this argument was not preserved in the circuit court. At oral argument, VMRC conceded the issue was not preserved and that the structure in question was a vessel.

VMRC next contends the circuit court erred in finding that VMRC did not have any jurisdiction to order the removal of the portion of the floating addition over state-owned bottomland.[2]

Here, we review whether the circuit court correctly ruled VMRC had no jurisdiction because the structure in question is a vessel. The issue, as framed by both parties and as presented at oral argument, is whether federal maritime law preempts the state's ability to order the removal of the structure. The Commission never ruled on federal preemption.

---

[1] VMRC alleges that the Inn's brief contains unsupported facts and inadequate citation to the record, in violation of Rule 5A:21(c). We have thoroughly reviewed the record in this case, not merely the briefs of the parties. Our analysis is not based on the Inn's statement of facts, but on the record. See Ward v. Charlton, 177 Va. 101, 107, 12 S.E.2d 791, 792 (1941).

[2] On appeal, the Inn supports the circuit court's decision, contending that Code § 28.2-1203 applies only to fixed structures. It is not clear from the circuit court's ruling whether Code § 28.2-1203 barred the Commission from exercising jurisdiction. The arguments before the circuit court were 1) the scope of Code § 28.2-1203 and 2) whether state regulations were preempted by federal maritime law. The scope of Code § 28.2-1203 would appropriately be addressed by the circuit court on remand.

The preemption issue is one of law. Code § 2.2-4027 of the Virginia Administrative Process Act (VAPA) allows judicial review of an agency decision.

> Under VAPA, the circuit court reviews an agency's action in a manner "'equivalent to an appellate court's role in an appeal from a trial court.'" J. P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997) (quoting Sch. Bd. v. Nicely, 12 Va. App. 1051, 1061-62, 408 S.E.2d 545, 551 (1991)). "In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal." Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997) (citation omitted). "The burden is upon the party complaining of the agency action to demonstrate an error of law subject to review." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 241, 369 S.E.2d 1, 6 (1988) (citing Code § 9-6.14:17; Roanoke Memorial Hospitals v. Kenley, 3 Va. App. 599, 603, 352 S.E.2d 525, 527 (1987)).

Commonwealth v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 479-80, 694 S.E.2d 290, 295-96 (2010).

Under the "substantial evidence" standard, the reviewing court may reject an agency's factual findings only when, on consideration of the entire record, a reasonable mind would necessarily reach a different conclusion. Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 441, 621 S.E.2d 78, 88 (2005) (citing Aegis Waste Solutions v. Concerned Taxpayers, 261 Va. 395, 404, 544 S.E.2d 660, 665 (2001)).

Although we are bound on appeal to the trial court's findings of historical fact, Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg, 41 Va. App. 468, 490, 585 S.E.2d 858, 869 (2003), we review questions of law *de novo*. See Clark v. Marine Res. Comm'n, 55 Va. App. 328, 334-35, 685 S.E.2d 863, 866 (2009) (citing Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008)).

> [J]udicial review of a legal issue requires little deference, unless it . . . falls within an agency's area of particular expertise. Whether the issue is one of law or fact or substantial evidence, we are directed to take account of the role for which agencies are created

- 5 -

> and public policy as evidenced by the basic laws under which they operate. Thus, the degree of deference afforded an agency decision depends upon not only the nature of the issue, legal or factual, but also upon whether the issue falls within the area of experience and specialized competence of the agency.

Appalachian Voices v. Air Pollution Control, 56 Va. App. 282, 289, 693 S.E.2d 295, 298 (2010) (internal citations and quotations omitted).

VMRC challenges the circuit court's ruling that the Commission had no jurisdiction to order the removal of a portion of the floating structure. Specifically, VMRC contends it does have jurisdiction to order cessation of encroachments over state-owned bottomlands and that federal maritime jurisdiction does not preempt state jurisdiction. The Inn responds that the structure is a moored vessel and is subject exclusively to federal admiralty or maritime law. The Inn further argues that any state attempt to regulate a moored vessel is preempted by federal law if the state law is inconsistent with federal law.[3]

Essentially, our analysis is whether the vessel in question is state- or federally-regulated. We begin by acknowledging that "the operation of a boat on navigable waters, no matter what its size or activity, is a traditional maritime activity to which the admiralty jurisdiction of the federal courts may extend." St. Hilaire Moye v. Henderson, 496 F.2d 973, 979 (8th Cir. 1974). However, assuming maritime law is applicable, it does not necessarily follow that state regulations are preempted. According to McCready v. Commonwealth, 68 Va. (27 Gratt.) 985, aff'd, 94 U.S. 391 (1876), the navigable waters within the state's territorial limits, as well as the soil beneath those waters, are the property of the state and may be controlled by the state in its

---

[3] The Inn, in its brief, argues the Commission erred in certain findings, i.e. the structure did not encroach on state bottomlands, and it was not a permanent structure or improvement constructed on or over state bottomlands. We do not address these allegations because the Inn did not assign cross-error to them, and under Rule 5A:21(b), an appellee's brief must contain any additional assignments of error it wishes to present.

discretion for the benefit of the people, as long as the state does not interfere with the authority

of the federal government in regulating commerce and navigation.

Article XI, § I of the Virginia Constitution expresses this Commonwealth's policy to

protect its waters from pollution and impairment for the benefit, enjoyment, and general welfare

of the people. To that end, Code § 28.2-101 provides, *inter alia*, that VMRC's jurisdiction "shall

include the Commonwealth's territorial sea and extend to the fall line of all tidal rivers and

streams except in the case of state-owned bottomlands where jurisdiction extends throughout the

Commonwealth." Further, Code § 28.2-1203(A) provides, *inter alia*

> It shall be unlawful for any person to build, dump, trespass or
> encroach upon or over, or take or use any materials from the beds
> of the bays, ocean, rivers, streams, or creeks which are the property
> of the Commonwealth, unless such act is performed pursuant to a
> permit issued by the Commission . . . .

Code § 28.2-1200 states in part:

> All the beds of the bays, rivers, creeks and the shores of the sea
> within the jurisdiction of the Commonwealth, not conveyed by
> special grant or compact according to law, shall remain the
> property of the Commonwealth and may be used as a common by
> all the people of the Commonwealth for the purpose of fishing,
> fowling, hunting, and taking and catching oysters and other
> shellfish.

The federal government has enacted a statutory scheme defining the roles of federal and

state governments in regulating navigable waters.

43 U.S.C. § 1311(a) states in part:

> It is determined and declared to be in the public interest that
> (1) title to and ownership of the lands beneath navigable waters
> within the boundaries of the respective States, and the natural
> resources within such lands and waters, and (2) the right and power
> to manage, administer, lease, develop, and use the said lands and
> natural resources all in accordance with applicable State law be,
> and they are, subject to the provisions hereof, recognized,
> confirmed, established, and vested in and assigned to the
> respective States or the persons who were on June 5, 1950, entitled
> thereto under the law of the respective States in which the land is

- 7 -

located, and the respective grantees, lessees, or successors in interest thereof.[4]

Section (d) states:

> Authority and rights of United States respecting navigation, flood control and production of power. Nothing in this subchapter or subchapter 1 of this chapter shall affect the use, development, improvement, or control by or under the constitutional authority of the United States of said lands and waters for the purposes of navigation or flood control or the production of power, or be construed as the release or relinquishment of any rights of the United States arising under the constitutional authority of Congress to regulate or improve navigation, or to provide for flood control, or the production of power.

Within this statutory framework, we now determine whether federal maritime jurisdiction, under the facts of this case, preempts state law. The Inn contends that the operation of a vessel on navigable waters is a traditional maritime activity and that VMRC's order of removal is repugnant to the right of navigation.

The United States Supreme Court, in Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996), provides us with the criteria to determine this issue. In Yamaha, the appellee decedent was killed while riding a jet ski manufactured by Yamaha. The decedent's parents brought an admiralty action for damages, invoking Pennsylvania's wrongful death and survival statutes. Yamaha responded that the state remedies could not be applied because the decedent died on navigable waters, contending that federal maritime wrongful death law provided the exclusive basis for recovery. The conflict between maritime law and Pennsylvania's wrongful death statute was the extent of damages.

---

[4] 43 U.S.C. § 1313 exempts federally-owned lands from § 1311, retaining all the federal government's navigational servitude and rights in and powers of regulation and control over those lands for the constitutional purposes of commerce, navigation, national defense, and international affairs.

The Supreme Court held:

> Because this case involves a watercraft collision on navigable waters, it falls within admiralty's domain. See Sisson v. Ruby, 497 U.S. 358, 361-367 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 677 (1982). "With admiralty jurisdiction," we have often said, "comes the application of substantive admiralty law." East River S. S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864 (1986). The exercise of admiralty jurisdiction, however, "does not result in automatic displacement of state law." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 545 (1995).

Yamaha, 516 U.S. at 206.

The Yamaha Court recognized that vindication of maritime policies demanded uniform adherence to a federal rule, with no leeway for variation or supplementation by state law. See id. at 210. State law cannot interfere "with the harmonious operation of maritime law." Id. However, the United States Supreme Court concluded that the damages available for the decedent's death were properly governed by state law, because Congress has not prescribed damages for wrongful death of a non-seafarer in territorial waters.

State of Maryland Dept. Natural Resources v. Kellum, 51 F.3d 1220 (4th Cir. 1995), addressed whether Maryland's strict liability statute was preempted by federal admiralty law, which premised liability on negligence. Kellum's barge went aground on and damaged state-owned oyster grounds. Maryland brought an action as an admiralty or maritime claim, alleging strict liability under Maryland law. The Fourth Circuit concluded the injury to the oyster ground resulted from an occurrence unique to maritime law, namely the stranding of a vessel. Id. at 1223. It concluded "the result for such a maritime tort is in admiralty and grounded on maritime theories of negligence and damages." Id. Maritime law governing a traditional maritime tort "requires findings of fault and causation as predicates for liability." Id. at 1224. However, the application of the Maryland "strict liability" statute eliminates the need for fault. Further, the Fourth Circuit found that federal law requires that damages be allocated

- 9 -

proportionally according to fault. State "strict liability" eliminates the federally-mandated proportionality analysis.

The Fourth Circuit concluded state law made changes to the substantive maritime law. While states can modify or supplement federal maritime law, states cannot "flatly contradict it or deprive any person of a substantive federal right." Id. at 1226. The Kellum Court found that Maryland law changed substantive maritime law and concluded that federal maritime law preempted state law. See also Pope & Talbot, Inc. v. Hawn, 346 U.S. 406 (1953) (superseded on other grounds) (In a personal injury suit, state contributory negligence law was preempted by federal maritime law of comparative negligence); Garrett v. Moore-McCormack, 317 U.S. 239 (1942) (In an action brought pursuant to the Jones Act, federal law preempted a state regulation on the burden of proof, a substantive right of the petitioner).

From these cases, we conclude that we must look at a number of factors to determine whether state law is preempted by federal maritime law.

1. Whether state law works a material prejudice to the characteristic features of general maritime law;

2. Whether state law interferes with the proper harmony and uniformity of federal law;

3. Whether state law attempts to change substantive maritime law;

4. Whether state law flatly contradicts federal law or deprives any person of a substantive federal right.

In this case, the Inn cites to no predicate facts from which we can conclude that the Commonwealth's right to regulate encroachment over its bottomlands is preempted by federal law. In fact, the Inn argued to the circuit court that federal maritime jurisdiction automatically preempts state law. Neither at the circuit court hearing, nor in its brief, did the Inn address any of the factors set forth above.

- 10 -

We must remember the structure is solely used for additional seating for the restaurant, due to seasonal increases in patrons. VMRC's order to remove the vessel in no way works a material prejudice, or any prejudice to the characteristic features of general maritime law, nor does it interfere with the proper harmony and uniformity of federal law in its international and interstate relations. The sole effect of the order is a decrease in the Inn's revenue and number of patrons that can be seated at any given time during the tourist season. VMRC's removal order only affects a single vessel and has no broader implications. It did not interfere with the barge's navigation in navigable waters.

VMRC's order does not attempt to change substantive maritime law which generally regulates maritime transactions,[5] customs, duties, and trade, regulating navigation of navigable waters, injury to person or property caused by a vessel on navigable waters, Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901, Death on the High Seas Act, 46 U.S.C. § 30301, and the Jones Act, 46 U.S.C. § 688. This list is not exhaustive but illustrative of the nature of federal maritime law.

---

[5] "Maritime transactions", as defined herein, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Colombia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.

Federal maritime law does not preempt VMRC from ordering the removal of the vessel. In fact, the Federal Submerged Lands Act, 43 U.S.C. § 1311, recognizes the state's ownership of lands beneath navigable waters and allows the states to "manage, administer, lease, develop and use said lands and natural resources . . . and subject to the provisions hereof . . . ." 43 U.S.C. § 1311 carves out an exception to this general grant, dealing with navigation, flood control, and production of power, none of which applies here. In conformity with 43 U.S.C. § 1311, Code § 28.2-1203 prohibits the encroachment upon or over rivers, ocean, and streams of the Commonwealth.

Thus we conclude that, under the facts of this case, federal maritime law did not preempt VMRC's authority to order the removal of the vessel.

Finally, VMRC assigns error to the circuit court's award of fees and costs to the Inn. The parties appear to agree that this issue rises or falls with our resolution of the other issues presented on appeal. Because we reverse and remand this case to the circuit court, we vacate the circuit court's award of fees and costs and remand for a determination of fees and costs, if any, based on Code § 2.2-4030.

CONCLUSION

Having found that the circuit court erred in holding that VMRC did not have jurisdiction to order the removal of the vessel, we reverse and remand for the circuit court to determine the issues presented in the Inn's petition for appeal before the circuit court, to include the scope of Code § 28.2-1203.

Reversed and remanded.