Present:  All the Justices

VIRGINIA MARINE RESOURCES COMMISSION

v.   Record No. 130239

CHINCOTEAGUE INN, ET AL.

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
April 17, 2014

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we consider whether the Court of Appeals erred in holding that the Virginia Marine Resources Commission lacked authority under Virginia law to regulate the expansion of the Chincoteague Inn's restaurant operations onto a floating platform secured alongside its building and situated partially over state-owned subaqueous bottomland.

I.   Facts and Proceedings

A.   Relevant Facts

The Chincoteague Inn is a restaurant that sits adjacent to the Chincoteague Channel in the town of Chincoteague, Virginia. In late April and early May 2010, the Inn lashed together two steel barges, held the barges in place, and connected those barges to the Inn by way of a gangway to create a floating platform.  Later, in June 2010, the Inn removed one of those barges and the floating platform was resituated alongside the Inn.  The Inn intended to keep the floating platform positioned alongside its building to be used as part of the Inn's

restaurant sitting and dining area for approximately four months until September 2010.

The Inn's plans were interrupted when an unidentified competitor complained to the Virginia Marine Resources Commission that the Inn had added a "large floating platform" alongside the Inn's building structure. On June 11, Commission staff member George H. Badger followed up on this tip and conducted an onsite inspection. Mr. Badger ascertained that, while a portion of the floating platform was situated above a man-made boat basin, a 54-foot long by 13.6-foot wide portion of the floating platform was situated above state-owned subaqueous bottomland.

Based on Mr. Badger's determination that a portion of the floating platform was situated over state-owned subaqueous bottomland, the Commission concluded that it had jurisdiction over that portion of the platform. Further, the Commission categorized this 54-foot by 13.6-foot portion of the floating platform as unauthorized and requiring removal. The Commission notified the Inn of this determination by a written Notice to Comply and demanded immediate removal of the unauthorized portion within 10 days. The Notice further warned the Inn that failure to comply would result in the matter being placed before the full Commission for an enforcement action, and that monetary penalties may be imposed.

The Inn, through its manager Raymond Britton, responded to the Commission's letter by submitting a joint permit application that requested an after-the-fact permit for the entire floating platform. The Commission, believing it inappropriate to act upon this application while a violation was ongoing, sent a letter to the Inn that again demanded removal of the unauthorized portion of the platform. On June 28, the Commission undertook another site inspection and found that the 54-foot by 13.6-foot portion of the floating platform had not been removed.

B.    Relevant Proceedings

The full Commission heard the enforcement action against the Inn, voted in favor of the enforcement request, and found that the 54-foot by 13.6-foot portion of the floating structure constituted an unlawful use of state-owned submerged lands pursuant to Code § 28.2-1203. The Commission directed removal of that portion of the floating platform within 10 days.

The Inn timely appealed the Commission's decision to the Circuit Court of Accomack County pursuant to Code § 2.2-4026, Rule 2A:2, and Rule 2A:4. The Inn challenged the Commission's decision on three points: (1) that the Commission failed to make express findings of fact required to allow a court to review an agency's actions, (2) that the Commission failed to make findings of fact based on the required substantiality of

the evidence, and (3) that the Commission lacked jurisdiction over the floating platform under Virginia state law, and that federal maritime law governed the floating platform.

The circuit court focused on this third argument to dispose of the case. In a final decree, the circuit court found that the floating platform was a "vessel" and that the Commission lacked jurisdiction to require removal of the floating platform. The final decree was unclear about whether this decision rested upon a determination that Virginia state law does not authorize the Commission to exercise jurisdiction over the floating platform, or upon a determination that federal maritime law preempts any such Virginia state law. The circuit court then set aside the Commission's decision, dismissed with prejudice the Commission's enforcement action, and awarded approximately $14,000 in fees and costs to the Inn.

The Commission timely appealed to the Court of Appeals. A three judge panel concluded that the Commission admitted that it failed to preserve the issue about whether the floating platform was a "vessel," and noted that the Commission had conceded that the structure was indeed a "vessel." Virginia Marine Res. Comm'n v. Chincoteague Inn, 60 Va. App. 585, 590, 731 S.E.2d 6, 8 (2012). The panel, however, also held that under the facts of this case federal maritime law did not preempt the Commission's authority to order the removal of the

4

floating platform over state-owned submerged lands.  Id. at 599, 731 S.E.2d at 12.  The panel therefore reversed the circuit court, vacated the award of fees and costs because the parties agreed that the court's award of fees and costs to the Inn "rises or falls" with the resolution of the other issues on appeal, and remanded the case back to the circuit court to determine whether Virginia state law authorized the Commission to issue its enforcement decision.  Id. at 591 n.2, 599, 731 S.E.2d at 8 n.2, 12-13.

The Court of Appeals granted the Inn's petition for a rehearing en banc and stayed the panel decision's mandate. Virginia Marine Res. Comm'n v. Chincoteague Inn, 60 Va. App. 719, 720, 732 S.E.2d 45, 46 (2012) (en banc).  In its en banc opinion, the Court of Appeals observed that the Commission conceded the issue that the floating platform was a "vessel." Virginia Marine Res. Comm'n v. Chincoteague Inn, 61 Va. App. 371, 375 n.1, 735 S.E.2d 702, 704 n.1 (2013) (en banc).  Thus, the Court of Appeals first addressed the preliminary issue of whether Virginia state law authorized the Commission to exercise jurisdiction over the floating platform before reaching the subsequent issue of federal preemption, and held that the Commission could not exercise jurisdiction over the Inn's floating platform pursuant to Code § 28.2-1203.  Id. at 380-81, 385-87, 735 S.E.2d at 707, 709-10.  The en banc

5

decision by the Court of Appeals affirmed the circuit court's determination that the Commission lacked jurisdiction and accordingly affirmed the circuit court's award of fees and costs to the Inn.  Id. at 387, 735 S.E.2d at 710.

The Commission timely filed a petition for appeal with this Court.

C.   Assignments of Error

Upon appeal, our review considers three logically distinct legal issues.  First, whether Code § 28.2-1203(A) permits the Commission to regulate the floating platform.  Second, whether federal maritime law applies to the floating platform because it is a "vessel" under 1 U.S.C. § 3.  Third, whether, if both Code § 28.2-1203(A) and federal maritime law apply to the floating platform, state and federal law may simultaneously govern that floating platform or if federal maritime law preempts Code § 28.2-1203(A).  The Court of Appeals in its en banc decision addressed the first two of these issues.  It did not reach the third issue of federal preemption.  Virginia Marine, 61 Va. App. at 387, 735 S.E.2d at 710.

In this appeal we address the assignments of error and the arguments of the parties to the extent they direct us to evaluate the following:

> 1. Whether the Court of Appeals erred in determining that the Commission lacked jurisdiction to regulate the floating platform under Code § 28.2-1203(A).

6

2. Whether the Commission can withdraw its concession that the floating platform is a "vessel" as defined under 1 U.S.C. § 3.

## II.  Discussion

### A.  Standard of Review

This appeal requires us to resolve issues of constitutional interpretation and statutory construction.  We resolve these purely legal issues de novo.  L.F. v. Breit, 285 Va. 163, 176, 736 S.E.2d 711, 718 (2013).

This appeal involves an administrative agency.  Typically, we give deference to the decisions of administrative agencies when those decisions "fall within an area of the agency's specialized competence."  Virginia Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009). "However, when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts."  Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005).  For those same reasons, we hold that no agency has specialized competence in the purely legal issue of interpreting the Constitution of Virginia.  See Browning-Ferris Indus. v. Residents Involved in Saving the Env't, 254 Va. 278, 284 492 S.E.2d 431, 434 (1997); Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996).  We

7

therefore afford the Commission's determination no deference when resolving the issues in this appeal.

B.    The Commonwealth's Sovereign Authority Over State-Owned Subaqueous Bottomland

The focus of this appeal is the operation of Code § 28.2-1203(A).  It is our "duty" to "constru[e] a statute to avoid any conflict with the Constitution" of Virginia and the United States Constitution.  Commonwealth v. Doe, 278 Va. 223, 229, 682 S.E.2d 906, 908 (2009); Jeffress v. Stith, 241 Va. 313, 317, 402 S.E.2d 14, 16 (1991); see also Town of Victoria v. Victoria Ice Light & Power Co., 134 Va. 134, 139, 114 S.E. 92, 93 (1922) ("Of course [a] statute must be construed as subordinate to . . . pertinent sections of the Constitution [that are] inconsistent therewith.").  This is true even when the statute's plain language is unambiguous and not absurd. See, e.g., Elizabeth River Crossings OpCo, LLC v. Meeks, 286 Va. 286, 319-20 & n.7, 749 S.E.2d 176, 193 & n.7 (2013).  It is therefore pertinent to review the constitutional context in which Code § 28.2-1203(A) arises before addressing the plain language of that statute.

1. The Basis for the Commonwealth's Sovereign Authority Over State-Owned Subaqueous Bottomland

Under the common law of England, the sovereign Crown held title to and exercised dominion over all tidal waters and tidal bottomland below the high water line located within England's

8

geographic jurisdiction.  Shively v. Bowlby, 152 U.S. 1, 11-14 (1894).  The geographic scope of this authority expanded as English colonists began to claim land on the North American continent, so that the Crown's title and dominion extended to the tidal waters and tidal bottomland in America.  Id. at 14.

After the American Revolution, this title and dominion formerly belonging to the English sovereign was claimed by the individual Thirteen Colonies who had, through the Constitutional Convention, become sovereign states.  See id. at 14-16; see also Alden v. Maine, 527 U.S. 706, 714-15 (1999) (discussing the "residuary and inviolable sovereignty" retained by the states pursuant to this Nation's constitutional design).  However, in light of this Nation's unique system of dual sovereignty, the scope of the Commonwealth's sovereign authority over subaqueous bottomland is no longer governed, or necessarily informed, by the common law of England.  See Martin v. Lessee of Waddell, 41 U.S. (16 Pet.) 367, 410-11 (1842) ("A grant [of subaqueous bottomland to a private entity] made by [a state sovereign] must therefore manifestly be tried and determined by different principles from those which apply to grants of the British [C]rown, when the title is held by a single individual in trust for the whole nation."); see, e.g., Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 285-86 (1997) (distinguishing English common law and recognizing that state

sovereign authority extends to waterways and subaqueous bottomland regardless of whether those environs are affected by the tide).

As a state sovereign, the Commonwealth retains an "absolute right to all [its] waters, and the soils under them, for [its] own common use." Martin, 41 U.S. (16 Pet.) at 410. Indeed, the title to and dominion over subaqueous bottomland is "an essential attribute" of the Commonwealth's state sovereignty. Idaho, 521 U.S. at 283; see also 43 U.S.C. § 1311 (confirming that state sovereigns retain title to and dominion over "the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters"). This sovereign power is limited only by that authority surrendered to the federal sovereign in the United States Constitution. Martin, 41 U.S. (16 Pet.) at 410.

2. The Scope of the Commonwealth's Sovereign Authority Over State-Owned Subaqueous Bottomland

The Constitution of Virginia directs the General Assembly to "undertake the conservation, development, or utilization of lands or natural resources of the Commonwealth, . . . and the protection of its atmosphere, lands, and waters from pollution, impairment, or destruction." Va. Const. art. XI, § 2. The General Assembly has affirmed the continued existence of the Commonwealth's sovereign authority over state-owned subaqueous

10

bottomland, as that authority derives from the English common law.  See Code § 1-200.  Moreover, the General Assembly has defined the scope of that sovereign authority so that it extends to "[a]ll the beds of the bays, rivers, creeks[,] and the shores of the sea within the jurisdiction of the Commonwealth" unless such subaqueous bottomland has been "conveyed by special grant or compact according to law."  Code § 28.2-1200.[1]  As we previously explained, the Commonwealth's sovereign authority over public environments, including subaqueous bottomland, has two facets.

First, the Commonwealth retains the right of jus publicum, "the right of jurisdiction and dominion for governmental purposes."  Commonwealth v. City of Newport News, 158 Va. 521, 546, 164 S.E. 689, 696 (1932).  This is the Commonwealth's sovereign authority to hold the public domain "for the interest or benefit . . . of the public."[2]  G. L. Webster Co. v.

---

[1] The Commonwealth has ceded its sovereign authority to the owners of subaqueous bottomland that rests above the mean low-water mark, and to the owners of subaqueous bottomland beneath creeks and rivers comprised within the limits of a lawful survey.  Code § 28.2-1202.  Also, we have previously observed that the General Assembly "chose not to include 'lakes' in its designation of bodies of water whose beds remain the property of the Commonwealth in the absence of a special grant or compact."  Smith Mountain Lake Yacht Club, Inc. v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001).

[2] The right of jus publicum has sometimes been termed the "trust" or "public trust" theory by other courts and commentators.  Although we have sometimes used that

Steelman, 172 Va. 342, 357, 1 S.E.2d 305, 311 (1939).  The jus publicum contains within it, as "inherent" and "inseparable" incidents thereof," certain "rights of the people."  Newport News, 158 Va. at 546, 164 S.E. at 696-97.

Second, the Commonwealth retains the right of jus privatum, "the right of private property" retained by the Commonwealth because it is "proprietor" of the public domain that has not been lawfully conveyed.  Id. at 546, 164 S.E. at 696.  This is the Commonwealth's authority to act "in a proprietary capacity" because it also has "the right and title of a private owner."  G. L. Webster Co., 172 Va. at 357, 1 S.E.2d at 311.

The Commonwealth retains "a most solemn duty to [both] administer the jus privatum of the [Commonwealth] and to exercise its jus publicum for the benefit of the people."  City of Newport News, 158 Va. at 549, 164 S.E. at 697.  In the exercise of its right of jus privatum, it is a constitutional imperative that the Commonwealth cannot "relinquish, surrender, alienate, destroy, or substantially impair" the right of jus publicum, or the rights of the people inherent to the jus

---

terminology, using it in today's opinion would not clarify the analysis.  City of Newport News, 158 Va. at 539-40, 164 S.E. at 695 ("It is questionable whether the interposition of the conception of a trust in these cases serves any useful purpose or tends to clarity of thinking or correctness of decision.").

12

publicum, except as authorized by the Constitution of Virginia. Id. at 546-49, 164 S.E. at 696-97.[3]

However, whether an activity is a right of the people inherent to the jus publicum is a matter of Virginia common law subject to the Constitution of Virginia and the General Assembly's modification by statute.  See, e.g., id. at 549-52, 164 S.E. at 698-99 (ascertaining whether fishery is a public right inherent to the jus publicum under Virginia common law); Stokes & Smith v. Upper Appomatox Co., 30 Va. (3 Leigh) 318, 337 (1831) (Brooke, J.) (observing that a particular activity was a public right inherent to the jus publicum because it was "expressly granted" by legislative acts of the General Assembly); see also Kraft v. Burr, 252 Va. 273, 276-77, 476 S.E.2d 715, 716-17 (1996) (state law determines to what degree the jus publicum restricts a sovereign's right to convey subaqueous bottomland to a private party).

It is within this constitutional context that we construe the plain language of Code § 28.2-1203(A).

---

[3] This imperative arose by implication from the 1902 Constitution of Virginia.  City of Newport News, 158 Va. at 546-47, 164 S.E. at 696-97.  Nothing suggests that the 1971 Constitution of Virginia disposed of that constitutional implication, and it survives today.

C.   Whether Code § 28.2-1203(A) Allowed the Commission to
     Regulate the Floating Platform

1. Construing Code § 28.2-1203(A)

The Commission's geographic jurisdiction includes "the

Commonwealth's territorial sea and extend[s] to the fall line

of all tidal rivers and streams except in the case of state-

owned bottomlands where jurisdiction extends throughout the

Commonwealth."  Code § 28.2-101.  The Commission's jurisdiction

therefore extends to the state-owned subaqueous bottomland over

which the Inn's floating platform was situated.  The question

before us is whether the General Assembly empowered the

Commission to regulate the Inn's floating platform because that

platform was engaging in either a "trespass" or

"encroach[ment]" under Code § 28.2-1203(A).

The General Assembly has made it "unlawful for any person

to build, dump, trespass[,] or encroach upon or over

[subaqueous bottomland that is] the beds of the bays, ocean,

rivers, streams, or creeks which are the property of the

Commonwealth, unless such act is performed pursuant to a permit

issued by the Commission or is necessary for" various

enumerated exceptions.  Code § 28.2-1203(A).[4]  Engaging in such

_____

    [4] Code § 12.2-1203(A) is a valid exercise of the right of
jus privatum as falling within the Commonwealth's proprietary
capacity as the entity retaining the right and title to the
subaqueous bottomland.  See Montgomery v. Commonwealth, 99 Va.
833, 835, 37 S.E. 841, 842 (1901) (owner of private property

14

an unlawful act is a Class 1 misdemeanor.  Code § 28.2-1203(B).

The Commission has authority to undertake inspections, issue

orders, and apply for injunctions to ensure compliance with

this statutory prohibition of unlawful building, dumping,

trespassing, or encroaching upon or over the Commonwealth's

subaqueous bottomland.  Code §§ 28.2-1211; 28.2-1212.

Code § 28.2-1203(A) is not ambiguous.  See Brown v.

Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (listing

factors indicating that statutory language is ambiguous).

Accordingly, we apply the plain language of the statute.

Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26

(2006).  Additionally, because the statute's terms are

undefined, those words are given their "ordinary meaning," in

light of "the context in which [they are] used."  Lawlor v.

Commonwealth, 285 Va. 187, 237, 738 S.E.2d 847, 875 (2013).

"Encroach" means "[t]o enter by gradual steps or stealth

into the possessions or rights of another; to trespass or

intrude," and "[t]o gain or intrude unlawfully upon another's

lands, property, or authority."  Black's Law Dictionary 607

(9th ed. 2009).  "Trespass" means "[a]n unlawful act committed

against the person or property of another[, especially]

wrongful entry on another's real property."  Id. at 1642.  We

has the legal right to order others off of that property, and,
upon refusal, the legal right to use proper force to expel such
others).

15

recognize an overlap between these terms, and therefore construe them so that neither is surplusage. Travelers Prop. Cas. Co. of Am. v. Ely, 276 Va. 339, 345, 666 S.E.2d 523, 527 (2008). A Code § 28.2-1203(A) "trespass" occurs when a person occupies the space "upon or over" state-owned subaqueous bottomland while simultaneously violating other law. A Code § 28.2-1203(A) "encroach[ment]" would be found when a person occupies the space "upon or over" state-owned subaqueous bottomland without violating any other law. These ordinary meanings of the plain language make sense in the context of Code § 28.2-1203(A).

However, we must construe these terms so that they do not contravene the Constitution of Virginia. Doe, 278 Va. at 229, 682 S.E.2d at 908; Town of Victoria, 134 Va. at 139, 114 S.E. at 93. The only applicable constitutional limitation is the right of jus publicum. Specifically, we must decide whether the Inn, in using the floating platform above state-owned subaqueous bottomland, was engaging in an activity that is a public right inherent to the jus publicum. If so, the Constitution of Virginia prohibits construing "trespass" or "encroach[ment]" as applying to the floating platform because enforcing Code § 28.2-1203(A) would "relinquish, surrender, alienate, destroy, or substantially impair" a constitutionally

16

protected "right[] of the people."  City of Newport News, 158

Va. at 546-47, 164 S.E. at 697.[5]

2.   Code § 28.2-1203(A) and the Constitution of Virginia

The interplay between Code § 28.2-1203(A) and the

constitutional protection of the public rights inherent to the

jus publicum manifests in the following three-step analysis.

a. Did the Plain Language of Code § 28.2-1203(A) Apply
to the Floating Platform?

First, the analysis questions whether the floating

platform was subject to Code § 28.2-1203(A) because it was

committing a "trespass" or "encroach[ment] upon or over" state-

owned subaqueous bottomland.  The clear answer is yes.

It is evident from the record that a 54-foot by 13.6-foot

portion of the floating platform occupied the physical space

over the Commonwealth's subaqueous bottomland.  The Inn was not

violating any other law when it had the floating platform

occupy the space above the Commonwealth's subaqueous

bottomland.  Thus, the floating platform was an "encroach[ment]

upon or over" the Commonwealth's subaqueous bottomland.  On the

_____

[5] On this point the Court of Appeals erred by inverting the
jus publicum.  The jus publicum is a constitutional doctrine
that simultaneously empowers and limits the actions of the
Commonwealth, not private individuals.  See City of Newport
News, 158 Va. at 546-49, 164 S.E. at 696-97.  Consequently,
because a private individual cannot violate the jus publicum,
the Court of Appeals erred in construing the terms appearing in
Code § 28.2-1203(A) as being defined by a private individual's
violation of the jus publicum.  Virginia Marine, 61 Va. App. at
385-86, 735 S.E.2d at 709.

face of the statute, Code § 28.2-1203(A) applied to the floating platform.

### b. Was the Inn's Activity Issued a Permit by the Commission or Exempted by a Statutory Exception?

Second, the analysis questions whether (1) the Commission issued a permit for the floating platform, or (2) the Inn's floating platform was exempted from Code § 28.2-1203(A) by satisfying a statutory exception. The clear answer to both questions is no.

It is evident from the record that the floating platform's encroachment was neither authorized by permit nor exempted from Code § 12.2-1203(A) by a statutory exception. The floating platform's encroachment therefore violated Code § 28.2-1203(A).

### c. Was the Inn's Activity a Public Right Inherent to the Jus Publicum?

Third, the analysis questions whether the Inn, in using the floating platform above state-owned subaqueous bottomland, was engaging in an activity that is a public right inherent to the jus publicum. The clear answer is no.

The General Assembly has modified the jus publicum to include the public's right to use the Commonwealth's subaqueous bottomland to "fish[], fowl[], hunt[], and tak[e] and catch[] oysters and other shellfish." Code § 28.2-1200; see also Bradford v. Nature Conservancy, 224 Va. 181, 194-97, 294 S.E.2d

18

866, 872-74 (1982).  The record reflects that the Inn was not engaged in any of these activities.

We have acknowledged that the jus publicum includes the public right to navigate the Commonwealth's waters.  James River & Kanawha Power Co. v. Old Dominion Iron & Steel Corp., 138 Va. 461, 470, 122 S.E. 344, 347 (1924).  The right of navigation, for purposes of the public right inherent to the jus publicum, is "the right to move and transport goods from place to place over the great natural highways provided by the navigable waters of the State without let or hindrance from or charge by any private person or corporation."  City of Newport News, 158 Va. at 550, 164 S.E. at 698 (emphasis added).  Although this right undoubtedly includes some cessation of movement upon the water, as incident to the right of navigation, it does not include all cessations of movement.

This necessarily follows from the fact that determining what activity the Inn was engaged in requires evaluating the totality of the circumstances.  See id. at 550-51, 164 S.E. at 698 (distinguishing between engaging in navigation, which includes "mov[ing] from place to place," and the right of fishery, which as a matter of practicality may require some degree of movement across water).  Regardless of the length of time a structure has stopped moving, we must evaluate the

19

circumstances surrounding that cessation of movement to determine just what activity is being undertaken.

The record reveals that the Inn's floating platform occupied the space over the Commonwealth's subaqueous bottomland for approximately two months before the Commission conducted its site inspection in June 2010. The Inn intended for the floating platform to occupy that space for a total time period of approximately four months. Although the Inn interrupted the floating platform's fixed nature for a 32-minute trip down the Chincoteague Channel in July 2010, this momentary engagement in the right of navigation does not obviate the facts showing that the floating platform was otherwise stationary for at least two months.

Moreover, those months of being stationary were not incident to the right of navigation. When the floating platform was supported by two barges, the Inn placed a bar and tables on the floating platform for its restaurant patrons. When one of those barges was taken away, the Inn refitted the floating platform with a new deck and handrails, and two gangways led from the Inn to the barge so that restaurant patrons could use the bar area and have outdoor seating on the water. The Health Department permitted the Inn to conduct this additional restaurant activity on the barge. Underscoring the point, the Inn admitted to the full Commission during the

enforcement proceeding that the barge was being used <u>as a restaurant</u>.

Restaurant operations are not incident to the right of navigation. Indeed, using the floating platform for restaurant operations "convert[ed] the public property," that is, the waters above the Commonwealth's subaqueous bottomland, "pro tanto to a use which is essentially private, whether it [was] exercised for pleasure or profit." <u>City of Newport News</u>, 158 Va. at 551, 164 S.E. at 698-99. Much like the use of the Commonwealth's water and subaqueous bottomland for "pleasure purposes" and fisheries, <u>see</u> <u>id.</u> at 531, 551-52, 164 S.E. at 691, 698-99, the Inn's placement of the floating platform alongside its restaurant was not a right of the public inherent to the <u>jus publicum</u>.

Thus, the Constitution of Virginia does not restrict the plain language of Code § 28.2-1203(A) from applying to the Inn's floating platform, and therefore the Commission may regulate that floating platform as an "encroach[ment] upon or over" state-owned subaqueous bottomland.[6]

---

[6] It is important to recognize what this appeal does not address. It does not address facts where an individual docks his boat, as necessary to disembark after traveling across the water, at a pier situated above state-owned subaqueous bottomland. It does not address facts where an individual lives in a floating structure situated above state-owned subaqueous bottomland. Determining whether those factual situations involve activities incident to the right of

21

D.    Whether the Commission Can Withdraw Its Concession That the Floating Platform Is a "Vessel" Under 1 U.S.C. § 3

The Commission asks to withdraw its concession that the floating platform is a "vessel" as defined under 1 U.S.C. § 3. The Commission relies upon the fact that the United States Supreme Court published its opinion in Lozman v. City of Riviera Beach, 568 U.S. ___, 133 S. Ct. 735 (2013), shortly after the Court of Appeals issued its en banc decision in this case. The Commission contends that because Lozman modified the definition of "vessel" for purposes of applying 1 U.S.C. § 3, the Commission should not be bound by its earlier concession that the floating platform is a "vessel."

Had the Commission conceded only the legal issue, we would not be bound by that concession of law. This is because an "issue [which] is a question of law . . . is not subject to a concession binding on this Court." Wright v. Commonwealth, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009); see also Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990) ("A party can concede the facts but cannot concede the law.").

But the Commission did more than concede a legal issue. The Commission also conceded that it did not preserve the issue of whether the floating platform was a "vessel." Such a

---

navigation, or are themselves a public right inherent to the jus publicum, is beyond the scope of today's appeal.

22

concession was appropriate because the Commission did, in fact, fail to preserve the issue by failing to assign error to the circuit court's determination that the floating platform was a "vessel." Thus, under the law of the case doctrine, the floating platform is a "vessel" as defined under 1 U.S.C. § 3 for purposes of this appeal. See Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26-27, 661 S.E.2d 822, 826 (2008).

It is important to note, however, that whether the floating platform was engaged in the public right of navigation inherent to the jus publicum, and whether the floating platform is a "vessel" under 1 U.S.C. § 3, are separate inquiries. The definition of "vessel" under 1 U.S.C. § 3 does require that a structure be "in navigation." Stewart v. Dutra Constr. Co., 543 U.S. 481, 496 (2005). But the "in navigation" requirement prescribed by a definition within a federal statute is not synonymous with the "right of navigation" protected by the Constitution of Virginia.

Our definition of the "right of navigation" inherent to the jus publicum focuses on the active and immediate moving across the navigable waters. See City of Newport News, 158 Va. at 550, 164 S.E. at 698. In contrast, the "in navigation" requirement in 1 U.S.C. § 3 allows for the mere "possibility" that a structure could engage in movement across the navigable waters. Stewart, 543 U.S. at 496. And as the United States

23

Supreme Court made clear, a "vessel" as defined in 1 U.S.C. § 3 need not be actively "carrying people or things over water." Lozman, 568 U.S. at ___, 133 S. Ct. at 740-41. Additionally, in light of the longstanding authority discussed in Part II.B., a federal statute cannot dictate how we understand the right of jus publicum under the Constitution of Virginia. See Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).

For these reasons, although the Commission failed to preserve the issue of whether the floating platform is a "vessel" under 1 U.S.C. § 3, that legal definition does not dictate our analysis of whether the floating platform was engaged in the public's "right of navigation" inherent to the jus publicum.

### III. Conclusion

This appeal involves a restaurant placing a floating platform over the Commonwealth's subaqueous bottomland without a permit or statutory exception in violation of Code § 28.2-1203(A). Moreover, the floating platform was used to undertake restaurant operations, and therefore was not protected by the Constitution of Virginia as a public right inherent to the jus publicum. For these reasons, we hold that the Court of Appeals erred in interpreting the scope of the Commission's authority under Code § 28.2-1203(A). Further, we hold that the

24

Commission failed to preserve the issue of whether the floating platform is a "vessel" under 1 U.S.C. § 3.

For the aforementioned reasons, we reverse the Court of Appeals' en banc decision.  Although the Court of Appeals' panel opinion addressed the issue of federal preemption, the Court of Appeals vacated that panel opinion upon granting en banc review.  See Moore v. Commonwealth, 276 Va. 747, 755, 668 S.E.2d 150, 155 (2008) (recognizing that the Court of Appeals considers panel decisions to be vacated in toto upon grant of en banc review).  Because the Court of Appeals' en banc opinion did not address the issue of federal preemption, that issue remains outstanding.  We therefore remand the case to the Court of Appeals to resolve all remaining issues, including whether application of Code § 28.2-1203(A) to the floating platform is preempted by federal maritime law.

                                        Reversed and remanded.


JUSTICE POWELL, with whom JUSTICE McCLANAHAN joins, dissenting.

I agree with the majority that the dispositive question in this case is whether the Inn, in using the barge[1] above state-

---

[1] Unlike the majority, I believe that the term "floating platform" is a misnomer.  In reality, the "floating platform" was simply one or two work barges with new decking installed. The majority, however, implies otherwise, as demonstrated by the majority's subsequent description that "the floating platform was supported by two barges."  (Emphasis added.)

owned subaqueous bottomlands, was engaging in an activity that is a public right inherent in the jus publicum. However, I disagree with the majority's decision to disregard the importance of the barge's designation as a vessel. It is readily apparent to me that a vessel "in navigation" is necessarily engaging in the "right of navigation." As a result of the majority's failure to give the barge's status as a vessel the proper consideration, the application of the Code § 28.2-1203(A) yields an absurd result. Accordingly, I must respectfully dissent.

In my opinion, the VMRC's concession that the barge is a vessel is dispositive in this case. The majority, however, disregards the importance of this designation, holding that "the 'in navigation' requirement prescribed by a definition within a federal statute is not synonymous with the 'right of navigation' protected by the Constitution of Virginia." The majority's holding is rendered erroneous by the fact that the law has changed significantly since 1932 when this Court decided Commonwealth v. City of Newport News, 158 Va. 521, 550, 164 S.E. 689, 698 (1932), the case upon which the majority relies to establish its definition for the right of navigation

---

The use of the term "floating platform" is, in my opinion, an unsuccessful attempt by the majority to downplay the ultimate effect this opinion will have on all watercraft.

26

inherent to the jus publicum.[2]  Notably, it has since been well-established that Congress is the ultimate arbiter of what activities are encompassed by the right of navigation, not the Constitution of Virginia.

As an initial matter, it is important to note that navigation is a subset of commerce.  See Gilman v. Philadelphia, 70 U.S. 713, 724 (1866) ("Commerce includes navigation.").  Accordingly,

> The Commerce Clause confers a unique position upon the Government in connection with navigable waters.  "The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States . . . . For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress."  Gilman, [70 U.S.] 713, 724-25.  This power to regulate navigation confers upon the United States a "dominant servitude," FPC v. Niagara Mohawk Power Corp., 347 U.S. 239, 249 (1954), which extends to the entire stream and the stream bed below ordinary high-water mark.

United States v. Rands, 389 U.S. 121, 122-23 (1967).

Indeed, this Court acknowledged Congress's power over navigation in City of Newport News, stating:

> By the adoption of the Constitution of the United States the State of Virginia to a limited extent, defined by the Constitution itself, relinquished a portion of its sovereignty to the United States.  In

---

[2] Additionally, the majority fails to address the fact that this definition was dicta.  In City of Newport News, the issue before the Court was whether the Constitution of Virginia includes the public right of fishery, not the definition of the right of navigation.  158 Va. at 533-34, 164 S.E. at 692.

> so doing it imposed upon itself the limitation that it may not so dispose of or appropriate to uses its tidal waters and their bottoms as to interfere with the power and right granted to the United States to regulate and control the navigation thereof, so far as may be necessary for the regulation of commerce with foreign nations and among the States.

Id. at 543-44, 164 S.E. at 695-96 (emphasis added).

In 1932, when City of Newport News was decided, however, it was believed that Congress' power over navigation was strictly limited to those navigable streams involved in interstate and international commerce. See id. Implicitly, this meant that power over intrastate commerce fell to the individual states. Thus, at that time, the Constitution of Virginia was the starting point for determining the activities encompassed by the right of navigation.

However, in 1942, the United States Supreme Court effectively eliminated the distinction between intrastate and interstate commerce with regard to Congress' power under the Commerce Clause.

> The commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them [the] appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce. . . . The power of Congress over interstate commerce is plenary and complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution. . . . It follows that no form of state activity can

28

> constitutionally thwart the regulatory power granted by the commerce clause to Congress. Hence the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power.

United States v. Wrightwood Dairy Co., 315 U.S. 110, 119 (1942); see also Wickard v. Filburn, 317 U.S. 111, 128-29 (1942) (extending Congress' power over interstate commerce to include intrastate activities that may have an indirect effect on interstate commerce); Gonzales v. Raich, 545 U.S. 1, 18 (2005).

In 1953, Congress ceded "title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters." Submerged Lands Act of 1953, 43 U.S.C. § 1311. However, in ceding title and ownership of the subaqueous bottomlands, Congress specifically retained "all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs." 43 U.S.C. § 1314(a) (emphasis added). Moreover, Congress specifically established that its rights in and powers of regulation and control over the subaqueous bottomlands "shall be paramount to" the rights and powers of the respective states. Id.

While the majority is correct that "a federal statute cannot dictate how we understand the right of jus publicum under the Constitution of Virginia," it ignores the Supremacy Clause which specifically states that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., Art. VI, cl. 2. (emphasis added).  It is readily apparent that Congress has deemed that the starting point for determining what activity is encompassed by the "right of navigation" inherent in the jus publicum is no longer found in the Constitution of Virginia; rather, the starting point is federal law.

Consequently, I believe that the determination that the barge is a vessel under 1 U.S.C. § 3 is dispositive, as Congress has deemed that all vessels are, by definition, "in navigation."  As a necessary corollary, any watercraft that is "removed from navigation for extended periods of time," is no longer a vessel.  Lozman v. City of Riviera Beach, 133 S. Ct. 735, 751 (2013).  Therefore, it is axiomatic that the use of a watercraft in navigation (i.e., as a vessel) invokes the right of navigation under federal law.

Additionally, the determination that the barge is a vessel obviates the need for any examination of how the vessel is used. As the United States Supreme Court explained,

> the "in navigation" requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is "used, or capable of being used" for maritime transportation. A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail. The question remains in all cases whether the watercraft's use "as a means of transportation on water" is a practical possibility or merely a theoretical one.

Stewart v. Dutra Constr. Co., 543 U.S. 481, 496 (2005).

Thus, the majority's examination of the Inn's use of the barge is moot. Indeed, by examining the issue of how the barge is used, the majority effectively disregards the barge's designation as a vessel. It cannot be disputed that the barge in the present case is a vessel. Therefore, in my opinion, it similarly cannot be disputed that the Inn was engaging in its public right of navigation through its use of the barge.

Furthermore, to hold that the VMRC has jurisdiction to enforce Code § 28.2-1203(A) with regard to vessels would yield an absurd result. This Court has recognized that "when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84,

31

87 (1985). However, our jurisprudence makes it clear that there are certain, limited exceptions to this rule.

> In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature. That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, <u>unless a literal application would produce a meaningless or absurd result.</u>

<u>Crown Cent. Petroleum Corp. v. Hill</u>, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997) (emphasis added) (citations omitted). The term "absurd result" describes "situations in which the law would be internally inconsistent or otherwise incapable of operation." <u>Boynton v. Kilgore</u>, 271 Va. 220, 227 n.9, 623 S.E.2d 922, 926 n.9 (2006) (internal quotation marks omitted).

It is readily apparent that the majority's definition of the right of navigation would render Code § 28.2-1203(A) incapable of operation. The majority's definition of the right of navigation would give the VMRC jurisdiction to require every watercraft not used for commercial purposes to get a permit every time it is over state-owned subaqueous bottomlands. This is not such a far-fetched proposition, as the VMRC has unequivocally indicated that it would embrace such a ruling, as demonstrated by its statement, which the majority quoted, that anything that floats over state-owned subaqueous bottomland "is an encroachment because it entered into the rights and

authority of the Commonwealth without its permission." As the Court of Appeals correctly noted, it would be impossible for the VMRC to implement such a requirement because "vessels can move and stop over the bottomlands numerous times in one day." Virginia Marine Res. Comm'n v. Chincoteague Inn, 61 Va. App. 371, 386, 735 S.E.2d 702, 710 (2013).

Additionally, the majority's approach results in the de facto criminalization of the act of temporarily mooring non-commercial vessels. As stated above, every vessel not used for commercial purposes would be required to get a permit every time it is moored over state-owned subaqueous bottomlands. The failure to acquire such a permit from the VMRC would subject the owner of the vessel to prosecution for a Class 1 misdemeanor, Code § 28.2-1203(B), and a fine of up to $25,000 per day. Code § 28.2-1213(A).

The problem lies in the fact that the VMRC does not have the authority to issue the required permit. Under Code § 28.2-1207(A), the VMRC may approve permits "to trespass upon or over or encroach upon subaqueous beds which are the Commonwealth's property." (Emphasis added.) Notably absent is the authority to approve permits for encroachments over state-owned subaqueous bottomlands. Under the maxim expressio unius est exclusio alterius, the mention of a specific item in a statute implies that the "omitted items were not intended to be

included." <u>Virginian-Pilot Media Cos. v. Dow Jones & Co.</u>, 280 Va. 464, 468-69, 698 S.E.2d 900, 902 (2010). Thus, the General Assembly's omission of "over" with regard to permits to encroach implies that it did not intend to give the VMRC the authority to grant such permits. Clearly, the General Assembly never intended to outlaw all recreational activities over state-owned subaqueous bottomlands. However, that is the natural result of the majority's application of Code § 28.2-1203(A).

It is readily apparent that the majority recognizes these inherent flaws in its opinion as demonstrated by its decision to address what this "appeal" does not address in footnote 6. The majority is correct: the VMRC's "appeal" does not address any of the situations listed. However, the majority ignores the fact that its holding would still be dispositive of those factual situations. Although the majority implies that docking a boat used for purposes of personal travel or living on a houseboat over state-owned subaqueous bottomlands would somehow require a different result from the present case, it offers no indication of how. Nor could it, as neither of these activities involves the movement or transportation of goods from place to place. Indeed, if today's holding does not apply to those factual situations, then the majority must acknowledge that it is not defining the <u>public</u> right of navigation; rather,

34

it is defining the right of navigation as it applies solely to the Inn.

Such a subjective approach can only lead to abuse. Indeed, I find it particularly telling that, at oral argument, the VMRC conceded that a boat that is moored for a majority of the year and used primarily as a guesthouse would not be subject to Code § 28.2-1203(A), because its use is incident to navigation. However, the barge in the present case, which is only moored for four months of the year and then actively used as a work barge for the remaining eight months would be subject to Code § 28.2-1203(A). The majority, however, tacitly approves of such an arbitrary distinction.

Allowing the VMRC to enforce Code § 28.2-1203(A) with regard to vessels, whether temporarily moored or otherwise, would necessarily result in the relinquishment, surrender, alienation, destruction or substantial impairment of the right of navigation, a clear violation of the jus publicum. Moreover, the application of Code § 28.2-1203(A) to vessels renders the statute incapable of operation and ripe for abuse. Accordingly, I would affirm the Court of Appeals' decision finding that the VMRC does not have jurisdiction to enforce Code § 28.2-1203(A).